BERNICE STAPLES V. THE STATE.

No. 3418. Decided March 3, 1915.

Rehearing denied March 31, 1915.

**1.—Seduction—Former Conviction—Void Judgment—Fornication—Former Jeopardy.**

Where, upon trial of seduction, defendant pleaded former jeopardy, in that he was convicted for fornication on facts growing out of the same transaction, but the record on appeal showed that defendant entered a plea of guilty at a time when the County Court was not in session, and when the judge of said court was absent and the punishment was fixed by someone not authorized by law to assess the punishment, such judgment of conviction is void and can· not be the basis for the plea of former conviction, and the trial court did not err in so holding. Following Ex parte Jones, 46 Texas Crim. Rep., 433, and other cases. Davidson, Judge, dissenting.

**2.—Same — Case Stated — Seduction — Fornication — Separate Offenses — Carving.**

But even if said County Court had been in session, either in regular or special term, the county judge present and the plea of guilty regularly entered by defendant's attorneys, a conviction for fornication in said County Court growing out of the habitual intercourse between defendant and the alleged seduced female, after the alleged first act of intercourse upon which the prose-cution for seduction was based would not be a bar to said prosecution for seduction, but defendant is guilty of two separate offenses, and the doctrine of carving does not apply. Following Simmons v. State, 54 Texas Crim. Rep., 619, and other cases. Davidson, Judge, dissenting.

**3.—Same—Objections to Charge of Court.**

Where, upon appeal from a conviction of seduction, the objections to the charge of the court were not properly verified, the same could not be reviewed. Following Ross v. State, 75 Texas Crim. Rep., 59.

**4.—Same—Motion for New Trial—Bill of Exceptions.**

An exception recorded in the order overruling the motion for a new trial

only verifies the fact that the motion was presented to the court and over-ruled by him, and that appellant excepted to the action of the court, but does not verify any ground alleged in the motion and that appellant on the trial of the case excepted to any ruling or order of the court. Following Marshall v. State, 5 Texas Crim. App., 273, and·other cases. Besides, there was no error in the court's charge in connection with the special charges submitted.

**5.—Same—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence sustained the conviction un-der a proper charge of the court, there was no reversible error. Davidson, Judge, dissenting.

Appeal from the District Court of Smith. Tried below before the Hon. Barney Briggs.

Appeal from a conviction of seduction; penalty, two years imprison-ment in the penitentiary.

The opinion states the case.

*Simpson, Lassetcr & Gentry* and *J. S. McIlwaine,* for appellant.—On question of court's refusal to submit defendant's requested charge that the alleged carnal intercourse was ·by reason of defendant's promise of marriage: Barclay v. State, 62 Texas Crim. Rep., 323, 137 S. W. Rep., 118.

On question of plea of former conviction: Emmons v. State, 29 S. W. Rep., 475.

On question of court's charge being fundamental error: Davis v. State, 2 Texas Crim. App., 588; Williamson v. State, 167 S. W. Rep., 360.

*C. C. McDonald,* Assistant· Attorney General, for the State.—On ques-tion of former jeopardy: Taylor v. State, 41 Texas Crim. Rep., 564; Epps v. State, 38 id., 284; Right v. State, 37 id., 627; Augustine v. State, 41 id., 59.

On question of corroboration: Gillespie v. State, 73 Texas Crim. Rep., 585, 166 S. W. Rep., 135.

HARPER, Judge.—At the September term, 1914, the grand jury of Smith County returned an indictment against appellant, alleging that "on or about the 15th day of February, A. D. 1913, in Smith County, Texas, appellant did then and there unlawfully seduce Tempie Roberson, an unmarried woman under the age of twenty-five years, and did then and there obtain carnal knowledge of the said Tempie Roberson by means and in virtue of a promise of marriage to her, previously made by him."

When the case was called for trial appellant, in addition to his plea of not guilty, filed a plea of former conviction. It appears that at the term of court preceding the one at which appellant was indicted, the prosecuting witness, Tempie Roberson, and her mother and father, Vic-toria and W. T. Roberson, attended court to appear before the grand jury, but they were not permitted to go before the grand jury. Only

Mrs. Roberson was called in, and she was immediately excused without being permitted to give any testimony. After the girl and her mother and father had remained all day, waiting to be called before the grand jury, Mr. Roberson says the foreman told them, "You are excused for all time." That none of them were permitted to go before the grand jury and give any testimony. Horace V. Davis, assistant county attorney of Smith County, testified: "I was a little bit vexed and did not like it very much because it seemed the grand jury would not have the witnesses before them; *that was a sort of log-rolling grand jury.*"

After that grand jury adjourned Mr. Davis took the affidavit of E. A. Tarbutton, in which it was charged that "on or about the 1st day of March, 1913, in the County of Smith and State of Texas, Bernice Staples, an unmarried man, did unlawfully have habitual carnal intercourse with Tempie Roberson, an unmarried woman, without their living together, from said date above written, since and up to on or about the 1st day of July, 1913."

On this complaint Mr. Davis filed an information on the 18th day of March, 1914. There is nothing in the record to show that appellant was ever arrested on this complaint and information, but Mr. Davis testified that appellant's counsel requested him "not to send the officers after appellant, but to let him know when the complaint was filed and he would have appellant come down, and he thought appellant would settle it. Three days later, the record discloses, a plea of guilty was entered, and a fine of $50 assessed against appellant, he later sending a check to his attorney, who paid the fine and costs.

It is on this conviction for fornication appellant relies to sustain his plea of former conviction, and a bar to a prosecution for seduction.

Mr. Davis testified he was not present when the plea of guilty was entered or paid. The county judge, J. F. Odom, who, after testifying that he was county judge of Smith County at the time, says: "I was not in town at the time this plea of the defendant of guilty to the charge of fornication was entered. I made no promise whatever in connection with that plea of guilty to fornication. Nothing was said to me about any immunity in connection with it from further investigation of it; I never heard anything about that before. I never heard of that before." The record is silent as to who accepted his plea of guilty and assessed this fine against appellant, but it is made clear by the record that no one authorized by law to accept a plea of guilty to this offense and assess the punishment did do so. The county judge, the only officer known to our law who was authorized to accept a plea of guilty and assess the punishment, swears most positively he did not do so. The defendant was not arrested, did not appear in court, and this entry and judgment is entered by someone (the record does not disclose who), who was not authorized in law to assess punishment in this character of case, and under such circumstances we do not think a plea of former jeopardy is sustained. In Ex parte Thompson, 57 Texas Crim. Rep., 437, it was held that a conviction at a term of court not

authorized by law is invalid, and must be treated as a nullity,—that the judgment is void. It follows that as the plea of guilty was entered at a time when the court was not in session; at a time when the judge of the court was absent, and the punishment fixed by a person (not disclosed) unauthorized by law to assess the punishment, the judgment entered is void and could not be a basis for the plea of former conviction, and the court did not err in so holding. It has always been held that a plea of guilty could not be received or entered when the court was not in session, and the Legislature, that pleas of guilty might be accepted at other times than a regular term of the court, by Act of the Twenty-second Legislature, approved April 21, 1891, authorized County Courts to hold special terms to receive pleas of guilty. But in this instance the court was not in session, either in regular or special term; the judge was not even in the courthouse, much less in the courtroom, and he did not accept the plea of guilty nor assess the punishment. Ex parte Jones, 46 Texas Crim. Rep., 433.

But in case the court had been in session either in regular or special term, the county judge present, and the plea of guilty regularly entered by his attorney, would the conviction for fornication bar a prosecution for seduction under the facts in this case? The indictment alleges that the offense of seduction was committed on or about the 15th day of February, 1913. Miss Tempie Roberson testified that the first act of intercourse took place on or about the 15th day of February—somewhere along in February. She testified that after this first act of intercourse, the acts of intercourse continued along all during the year up until about the last of July—that he had intercourse with her every two or three days (on every suitable occasion) until defendant went to his mother's, which occurred about the first of August. Seduction is constituted by one single act of intercourse under a promise of marriage, and it must be based upon the first act of intercourse. No matter how many acts may be testified to, if the injured female was not a virgin when the first act occurred with the person charged with the offense, under our decisions no conviction could be had, nor could the prosecution be based upon any other than the first act. If when the first act occurred the prosecution should not be begun until three years thereafter, the offense of seduction would be barred, even though he had continued to have intercourse with the girl during all the time, even up to the day of the filing of the indictment. Simons v. State, 54 Texas Crim. Rep., 619. The offense of seduction was a completed offense when the first act of intercourse took place, if the female was induced to submit her person to appellant under a promise of marriage brought about by protestations of love and affection and his conduct.

The information charging fornication alleges the offense to have been committed by appellant by having habitual carnal intercourse with Tempie Roberson. One act of intercourse would not authorize a conviction under such an information—the State was required to show that it was a habit of appellant to have intercourse with the female

whenever suitable opportunity was afforded.    As said in Hilton v. State, 41 Texas Crim. Rep., 190, an occasional act is not sufficient to show "habitual" intercourse, much less one act.    Under the testimony of Miss Roberson there could be no doubt of appellant committing the offense of seduction, and under the testimony of both Miss Roberson and appellant that he thereafter committed the offense of fornication. There is in this record no dispute about the question of habitual carnal intercourse, for both appellant and Miss Roberson so testify.    The only dispute is as to whether or not the first act was obtained under and by virtue of an engagement to marry—Miss Roberson affirms it was so obtained—this appellant denies.    And as the evidence offered in behalf of the State would show that appellant first committed the offense of seduction by having an act of intercourse induced and brought about under a promise to marry the girl, and the testimony of both the State and defendant would show that thereafter the offense of fornication was committed by appellant by having habitual carnal knowledge of the girl, we are at a loss to understand how it can be seriously contended that he could not be prosecuted and convicted of both offenses.    It is not a carving of an offense out of one transaction.    According to both the witnesses for the State and for the defendant, even according to the defendant himself, there must have been some twenty-five or thirty or more transactions between them.    It was a matter of almost daily occurrence while the appellant was boarding at the home of the father of the prosecuting witness.

We entirely agree with the contention that if there is but one transaction, the State can cut or carve but once, and having been prosecuted and convicted of the offense carved out of the transaction, there can be no further prosecution for the transaction out of which the offense was cut or carved.    But we do not understand how anyone can contend that the evidence in this case shows but one transaction.    The transactions were almost numberless.    If A goes to the house of B and steals therefrom at the same time two watches, one belonging to B and one to C, one conviction for theft of the watch of B would bar a prosecution for the theft of the watch of C.    But if A on one trip steals the watch of B, and then makes a second trip and steals the watch of C, he can be prosecuted and convicted for the theft of both watches, and a conviction for theft of the watch of B would not bar a prosecution for the theft of the watch of C, although stolen from the same house and from the same place in the house, there being two transactions, the thefts having occurred at different times.    So in this case the acts of intercourse having extended from February to August, occurring every two or three days at different times and places, can not be said to constitute but one transaction, and that a prosecution for seduction, which was a completed offense when the first act of intercourse took place, would bar a prosecution for fornication based on the subsequent acts, nor will a conviction for fornication under such state of facts bar a prosecution for seduction.    If there was but *one act of intercourse,* and a prosecution for fornication thereunder, alleging

a living together, and a conviction had, we could readily see how it could be contended it would bar a prosecution for seduction based on the *same act* of intercourse. In that sort of case it might well be contended that the State had carved an offense out of the single transaction, and should not be allowed to carve again. But under the evidence in this case we have no such case. The information for fornication alleged habitual carnal intercourse, and the proof of one act of intercourse alone, whether under promise of marriage or not, would not authorize nor sustain a conviction under such an information, while under the charge of seduction proof of one act under a promise of marriage will justify and sustain a conviction. Under the evidence offered in behalf of the State appellant committed both offenses at separate and distinct times, and the court did not err in withdrawing the plea from the consideration of the jury. This question is discussed at length by the Supreme Court in Thomas v. State, 40 Texas, 36, and by this court in Lewis v. State, 1 Texas Crim. App., 323; Whitford v. State, 24 Texas Crim. App., 489; Nichols v. State, 37 Texas Crim. Rep., 616; Burns v. State, 36 Texas Crim. Rep., 601; Taylor v. State, 41 Texas Crim. Rep., 564; Ford v. State, 56 S. W. Rep., 918; Harris v. State, 50 Texas Crim. Rep., 411; Parks v. State, 57 Texas Crim. Rep., 569.

We do not think this question is raised in the record in a way to authorize us to review it, as there is no bill of exceptions in the record. It is true, there is a paper in the record, in which it is alleged that certain objections were made to the charge of the court, but this paper is verified in no way, and does not bear the signature of the trial judge, nor is there any verification that it was ever submitted to the trial judge. In the case of Ross v. State, 75 Texas Crim. Rep., 59, 170 S. W. Rep., 306, this court held:

"There is what is termed in this record 'defendant's exceptions to the charge of the court.' This is not verified in any way. The trial judge's name is not appended thereto, nor is it in any manner approved in a way so as to make it properly a record paper. It is true that the file marks of the clerk appear thereon and show this paper was filed May 16, 1914, the same date the court's charge was filed; but this does not evidence the fact that it was presented to the trial judge before his charge was read to the jury, or that it was ever presented to the trial judge. The radical changes made by the Thirty-third Legislature (chapter 59) in regard to these matters has been frequently before our civil courts, and in each and every instance, so far as we have been able to ascertain, the holding has been that the fact that the objections were made before the charge was read to the jury must be evidenced by a bill of exceptions approved by the trial judge. Eldridge v. Citizens Ry. Co., 169 S. W. Rep., 375; Heath v. Huffhines, 168 S. W. Rep., 974; Gulf, T. & W. Ry. Co. v. Culver, 168 S. W. Rep., 514; Ford Motor Co. v. Freeman et al., 168 S. W. Rep., 80; Southwestern Ry. Co. v. Wadsack, 166 S. W. Rep., 42; Saunders v. Thut, 165 S. W. Rep., 553; Johnson v. Hoover & Lyons, 165 S. W. Rep., 900; Quanah A. & P. Ry. Co. v. Galloway, 165 S. W. Rep., 546. Other cases from our civil courts

construing these amendatory Acts could be cited, but as the cases above quoted discuss the matter fully from every viewpoint we deem it unnecessary to cite others. It appears that not only must objection in writing be made to the charge before it is read to the jury, but if the court overrules the objections a bill of exceptions must be reserved to the action of the court and be incorporated in the record."

Appellant, to obviate the force of this objection, contends that as the order overruling the motion for a new trial shows that he excepted to the action of the court in overruling his motion for a new trial, that this exception should be sufficient to cause us to review each ground alleged in the motion for a new trial, although the record contains no bill of exceptions to the evidence introduced, to the charge as given, or the refusal of the court to give any special instruction requested. An exception recorded in the order overruling the motion for a new trial only verifies the fact that the motion was presented to the court and overruled by him, and that appellant excepted to that action of the court, but does not verify any ground alleged in the motion, and that the appellant on the trial of the case excepted to any ruling or order of the court. Marshall v. State, 5 Texas Crim. App., 273; McDaniel v. State, 5 Texas Crim. App., 475; Yonez v. State, 6 Texas Crim. App., 429. However, we have gone entirely through the record; the court gave six of the special charges requested by appellant, and if there were any omissions in the main charge as given, the special charges requested and given certainly cover such omissions, and present affirmatively the defenses relied on by appellant.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, JUDGE.—I dissent and will write if rehearing is not granted.

[Rehearing denied March 31, 1915.—Reporter.]

DAVIDSON, JUDGE (dissenting).—I have been unable to agree with my brethren in the disposition of this case. There are several questions of considerable importance that ought to cause a reversal. I shall only mention, however, two, the act of the court in withdrawing the plea of jeopardy and the sufficiency of the evidence.

When the case was called for trial appellant interposed the plea of jeopardy. There was no demurrer to the plea. Evidence was introduced in support of it and it went before the jury. The court, however, in his charge withdrew it from the consideration of the jury. I do not understand upon what theory this was done. It may be that the court thought the record did not justify the plea. In this connection it was shown, without controversy, that the witnesses were in attendance upon the grand jury to testify in regard to the illicit intercourse between appellant and prosecutrix, Tempie Roberson. Dr. Bell, one of the witnesses whose testimony was of importance, was carried before the grand jury, as was the mother of prosecutrix. She says,

however, that after being sworn she was dismissed without testifying. The remaining witnesses were not before the grand jury, but were in attendance upon that body. The grand jury excused the witnesses and failed or refused to present an indictment against appellant. The indictment upon which this prosecution was based was found by a subsequent grand jury, that is, at a subsequent term of the District Court. After the grand jury failed or refused to indict appellant for seduction, or for any other offense, the county attorney's office filed a complaint and information charging him with fornication, in the County Court. Appellant plead guilty and paid his fine and costs. The matter with reference to the action of the grand jury as to what should be done with appellant under the circumstances seems to have been rather thoroughly discussed between the assistant county attorney and one of appellant's counsel, after the grand jury failed to indict. Subsequently, the prosecution for fornication and the judgment thereon followed. The State as well as the defendant introduced the complaint, information and judgment of the County Court in the fornication case on appellant's trial in this case.

In regard to the plea of jeopardy, it was shown conclusively by the judgment, as follows: "March 21, 1914. This day this cause was called for trial, and both parties appeared and announced ready for trial, and the defendant, Bernice Staples, after being duly admonished of the consequences thereof by the court, pleaded 'guilty' to the charge herein, and waived a trial by jury and submitted his cause to the court. Wherefore it is considered by the court that the defendant is guilty as charged, and his punishment is assessed at fifty dollars fine. It is therefore considered, ordered and adjudged by the court, that the State of Texas do have and recover of the defendant, Bernice Staples, the said fine of fifty dollars and all costs of this prosecution; and the defendant being present in court is placed in custody of the sheriff, who will commit him forthwith to the jail of said county until said fine and costs are paid. And execution may issue against the property of the said defendant for the amount of said fine and costs." It was shown also by the testimony of the assistant county attorney, one of appellant's counsel, and appellant himself that he pleaded guilty to fornication in the County Court after the whole matter was discussed between his counsel and State's counsel, all three of them testifying that he pleaded guilty and the judgment of the court states that he pleaded guilty after being admonished by the court as to the consequences of his plea, and that he was then in court, and remanded to the custody of the sheriff until his fine and costs were paid. It is also shown conclusively and not questioned that he paid the fine and costs.

After the argument the court withdrew the entire plea of prior conviction and all the evidence in support of it from the consideration of the jury. Under this record it is my opinion that the plea of jeopardy was well taken and should have been sustained, and the court was in error in withdrawing it from the jury. There is no question of the

fact that the fornication case was based upon the same facts as those introduced in the trial of this case for seduction.

It is well established under the doctrine of carving that where the State prosecutes and secures a conviction this would bar any prosecution either on the same facts or the facts growing out of the general transaction. For collation of authorities, see Mr. Branch's work on Criminal Law, sec. 399. The doctrine there laid down is thus tersely and correctly stated by Mr. Branch: "He (State's counsel) may carve as large an offense out of a single transaction as he can, but he must cut only once." Gresham v. State, 19 Texas Crim. App., 513; Paschal v. State, 49 Texas Crim. Rep., 111; Moore v. State, 33 Texas Crim. Rep., 166; Shubert v. State, 21 Texas Crim. App., 551; Herera v. State, 35 Texas Crim. Rep., 607; DeLeon v. State, 55 Texas Crim. Rep., 41; Quitzow v. State, 1 Texas Crim. App., 53; Taylor v. State, 50 Texas Crim. Rep., 288. To the same effect is Wilson v. State, 45 Texas, 81; Hudson v. State, 9 Texas Crim. App., 151; Simco v. State, 9 Texas Crim. App., 338; Hirshfield v. State, 11 Texas Crim. App., 216; Adams v. State, 16 Texas Crim. App., 162; Willis v. State, 24 Texas Crim. App., 588. These are certainly enough decisions from this court to support the enunciated doctrine.

The decisions also draw a distinction between former acquittal and former conviction. This has been noticeably so by the decisions in Texas since Simco v. State, 9 Texas Crim. App., 338. These are also collated by Mr. Branch in his work on Criminal Law. It is also stated by Mr. Branch, and correctly, that former conviction, unlike former acquittal, to be a bar, only requires that the transaction or the facts constituting it, be the same as applied to the doctrine of carving. It has also been held that if the court had jurisdiction and defendant submitted to the judgment and paid his fine and costs, such conviction will sustain a plea of former conviction, though the pleading was defective. Davis v. State, 37 Texas Crim. Rep., 359. It is unnecessary to cite further authorities on that proposition. Under these authorities and under the Constitution as well as the statute, where the State sees proper to prosecute and obtain a conviction for fornication, and both transactions are based on the same transaction, and the State secures a punishment, the plea of jeopardy is well taken. So the State having obtained a conviction for fornication on the same state of facts upon which it relied for conviction for seduction, and it growing out of the same illicit relation and the same transaction, it is debarred from further prosecution on those facts for any other offense. I do not care to follow that question further.

In regard to the second proposition, that is, the want of sufficient evidence, I confine myself to rather a brief statement of the case. The prosecutrix testified to an engagement between herself and appellant, and further that he importuned her to have intercourse with him from that viewpoint. She says at first she refused but subsequently yielded. She says in this connection: "The last conversation I told about, at the time when I gave up to him, was upon an occasion when we had

been up to his father's house and was coming on back; he was begging me, like he usually was whenever we were out that way; so I told him if we did, I rather be in a house somewhere, and we had to pass by his brother's house, and they were gone, and we agreed to go in there, in his brother's house. . . . We both agreed to go in the house. I told him that if I did act that way, I had rather be in a house, and we decided that we would go in his brother's house. We did go in there, and he had something to do with me in there; well, he tried, but then he couldn't. He did not succeed in 'doing it.' We did not stay in there long; about ten or fifteen minutes, I reckon. . . . At the time I did this I was willing to have intercourse with him. I had given up to him that night. . . . After this time, we had intercourse; that is to say, we tried. We tried for a month and a half or maybe two months before we succeeded. After this we discussed the question of marriage; we always were speaking something about it. I told him that I was a virtuous girl and never had done anything of that kind, and I asked him would he know, and he said he would, if I had never had no dealings with no other man, he said he would know, and it would not make any difference with me if I was a virtuous girl; and after the first time I asked him didn't he believe then what I told him, and he said that he did. After this time that we went to the house of his brother, we went several places and met at different places to have intercourse again." She states, however, it was a month and a half or two months before he succeeded in having intercourse with her. She says: "These acts of intercourse continued along on during the year up until along the last of July or the first of August, somewhere along there. I let him have intercourse with me a time or two, after he backed out from marrying me; then I found out that I was in the family-way, and told him that I was going to quit." She further testifies that she and appellant went to see Dr. Holland about the matter, and he told them there was not anything wrong with her and gave her some medicine; that it would do the work. She says that it was on the 4th of February when she learned definitely that she was pregnant. That was in Dr. Bell's office. She had been carried by her mother to see Dr. Bell, who, upon examination of her, ascertained the fact that she was pregnant, and he so informed her. This seems to have been the 4th of February. When Dr. Bell made that announcement she most strenuously denied her pregnancy and said it was not true; that she had not had intercourse with anybody. Prosecutrix's mother was in the room at the time this occurred, and Dr. Bell informed her that her daughter was pregnant. The girl still insisted that it was not true. Dr. Bell asked her mother to step out of the room a moment, that he thought he could make prosecutrix admit it. After further examination of the girl and after discussing the matter with her she admitted she was pregnant, and that she would be confined on the 10th of February, six days from the time Dr. Bell was talking with her. He informed her that was not true, that it would be in the neighborhood of two months before she would give birth to a child. The facts show she

gave birth to a child on the 18th of March.  Dr. Bell testified further that she had been having intercourse with men recently before his examination of her, going into detail of the reasons why he knew that was true.  She had in her testimony before the jury stated that the intercourse ceased between them the last of July or first of August previous to Dr. Bell's examination, admitting, however, she had on one or two occasions subsequently to breaking off the marital agreement between them had intercourse with appellant.  It is also in evidence that she was engaged to marry Charley Cross, and she requested Mrs. Smith to make her a wedding dress for that purpose, and she admits in her testimony that she was engaged to him at one time and loved him, and states in her testimony on the trial before the jury that she still loved Charley Cross.  Cross was a brother-in-law of Mrs. Smith.  Mrs. Smith did not want Cross to marry her and declined to make the wedding dress. Her language in reference to Charley Cross is thus stated in the record: "I told him I loved him.  I did love him, and I still love him.  I still love Charley Cross.  He has been married; he is a widower now.  He has never married yet.  I told Bernice Staples I loved him."  There is quite a lot of testimony also in the record with reference to a damage suit against appellant growing out of this matter, and there seems to have been an impression on the part of prosecutrix and her father that it was necessary to obtain a conviction for the seduction before they could get damages in a civil suit, and especially this seems to have weighed heavily upon the mind of the father.  He talked a great deal about the damage suit.  He told of instances where parties had obtained damages under similar circumstances, and went to see a lawyer for the purpose of bringing the damage suit.  It seems to indicate in the mind of the father of prosecutrix as well as prosecutrix that a conviction was necessary in the seduction case in order to obtain a judgment in the civil proceedings.  Recurring to her testimony with reference to the various attempts to have intercourse with her before he succeeded, she stated that before he did succeed that he tried it often, perhaps every two or three days.  There is other testimony going to show that other men took liberties with her, such as kissing her and putting their arms around her and matters of that sort, and there is some testimony to the effect that she wanted to get married, and one witness testified he had been going with her; that when he discovered that she wanted to get married, he would not go with her any more, that he did not want to marry, and so informed her.

The testimony is rather voluminous and minute in detail, but I deem it unnecessary to go any further in reference to the evidence. I feel more than justified in the conclusion that the facts stated do not justify a conviction for seduction.  To say the least of it, it is rather a remarkable statement that to prove her chastity she would herself propose to her lover such a test of chastity and offer her body as a test of that chastity.  It would occur to the average mind that a chaste girl would scarcely volunteer to offer to a man her body to test her virginity or chastity when he was questioning that chastity.  Evidently

the Charley Cross matter or something had come up between them, as she said it often did, and about which appellant would become violent in his jealous anger and to the extent that he suspected rather intimate relations between them. From her statement he did not demand or ask of her to prove her chastity, but she herself suggested that if he would know whether she was chaste or not she would submit her body as a test. When this offer came he stated he would know, and she says then she insisted upon going in the house of appellant's brother, who was absent from home, and there make a test of the matter. She testifies that he did not succeed nor did he succeed for a month and a half or two months, but they were continually testing the matter under her statement before the act of intercourse was consummated. The proposition came from her—not appellant. As she states it, the conclusion seems to be irresistible that he would not marry her because he suspected her virtue, and that she had been intimate with other men. If her testimony does not carry that conclusion, then it would be difficult to understand what she did mean by her statement. Under this view of it she proposed to submit her body to him as a test of the chastity in order to obtain from him the coveted marriage. This was a condition precedent to the marriage as testified by her. The extent of his satisfaction, as expressed in her testimony, seems to have been of very short duration, and rather of an illusory nature, for she says it continued every two or three days, or at least at frequent intervals for a month and a half or two months, until the final act of intercourse was consummated. She was willing all the time and on all occasions to permit him to have intercourse with her or try to do it. All this was predicated upon the belief on the part of appellant that she was not chaste, and on her part as a condition precedent to the marriage. Her testimony not only fails to prove chastity, but, as I understand it, proves the contrary. It is a peculiar statement to make, or an admission from the prosecutrix, that she was willing to prostitute her body to an unholy intercourse to prove the fact that she was a chaste woman. It occurs to me that such a statement would be abhorrent to a truly virtuous woman. Of course under the statute defining seduction, there could be no seduction if she was unchaste, or if it was upon a conditional promise of marriage, and in no event could there be a seduction until the intercourse had been obtained. It is the act of intercourse under the agreement of marriage of a chaste woman led away from the path of virtue by the accused that constitutes this offense. Conditional promises can not form a basis of seduction. An unchaste woman can not be seduced.

I have written what I have written without undertaking to follow or reply to the opinion of the majority affirming the judgment. I have gone to the record for the conditions as I see them applicable to the case. Without touching other questions in the case I am convinced that this judgment ought to be reversed on the two questions above mentioned.