William Curtis HENDRIX, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–03–00950–CR, 14–03–00951–CR,
14–03–00952–CR, 14–03–00953–CR,
14–03–00954–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 16, 2004.

Kenneth E. Goode, Houston, for Appellant.

Carol M. Cameron, Houston, for State.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant William Curtis Hendrix was charged with aggravated sexual assault in five cases consolidated for trial. Three cases (trial court cause numbers 955262, 955263, and 955264) involved acts alleged against M.S.; two cases (trial court cause numbers 955265 and 955266) involved acts alleged against B.S. A jury found appellant guilty as charged in all five cases and assessed punishment at life imprisonment in each case. The trial court ordered the sentences to run consecutively.

Appellant raises four points of error on appeal, arguing the trial court erred by (1) charging separate offenses in the disjunctive (point of error one); (2) failing to charge the jury on the lesser included offenses of indecency with a child by exposure and by contact (points of error two and three), and (3) cumulating appellant's sentences absent proof the convictions were for offenses occurring on or after September 1, 1997 (point of error four). We overrule points of error two, three, and four, and part of point of error one; we sustain point of error one as it relates to cause number 955264. Accordingly, we (1) affirm the judgments in trial court cause numbers 955262, 955263, 955265, and 955266; and (2) reverse the judgment of the trial court in cause number 955264 and remand that cause for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

M.S. and B.S. are the minor children of Alfred S., Jr.[1] In 1995, Alfred separated from the children's mother, and B.S., his son, moved in with Alfred. M.S., his daughter, continued to live with her mother. In 1997, Alfred filed for divorce, and M.S. moved in with Alfred and B.S.

Alfred characterized appellant, "Bill," as "the best friend of the family for a long time" who was like a "big brother" to him. Alfred shared a residence with appellant on two occasions. The first time was in 1997, when Alfred and B.S. stayed in appellant's apartment. The second time was in 1999, when appellant came to live with Alfred, M.S., and B.S., in a house on Burr Street that Alfred inherited when his fa-

---

1. At the time of trial in August 2003, B.S. was thirteen and M.S. was eleven.

ther passed away in 1998. There was a period of about five months when Alfred and M.S. were living with Alfred's girlfriend at a different location, and, during this time, B.S. lived alone with appellant in the house on Burr Street. According to B.S., he and appellant slept in the same bed during that time. Later, when Alfred and M.S. moved back into the house on Burr Street, M.S. began sleeping in the bed with appellant, and B.S. slept on the floor.

On August 29, 2002, Alfred, B.S., and M.S. were visiting Alfred's stepmother, Debbie. M.S. was upset and asked Debbie's fifteen-year-old daughter to talk with her in private. After hearing what M.S. had to say, Debbie's daughter told the adults what M.S. had said, and Debbie then talked with M.S. M.S. told Debbie appellant had molested her and also talked about other things that appellant had done to her. Debbie observed some bruises on M.S. and that her vaginal area looked irritated. When Debbie told M.S. that Debbie had to tell Alfred, M.S. became hysterical, begging Debbie not to tell because appellant had threatened M.S. that, if she told, he would shoot Alfred, and CPS would take M.S. away.

After Debbie told Alfred what M.S. had said, Alfred asked M.S. what had happened. M.S. replied, "He touched me, dad." Alfred then took M.S. to the police station. From the police station, they went to Texas Children's Hospital, where Dr. Kathleen Ferrer conducted a sexual assault examination of M.S. the following day.

Dr. Ferrer found bruises, in different stages of healing, on M.S.'s buttocks and left leg. The genital examination did not reveal bruising, redness, tears, or lacerations, and the hymenal ring was intact. A visual examination of M.S.'s anus did not reveal any abnormal findings. M.S. told Dr. Ferrer that it had been about a week or so since the last time she was sexually assaulted. At the hospital, M.S. also told a pediatric emergency room physician that "Bill" was the assailant and the "last contact" had been a week ago.

After M.S.'s outcry, she and B.S. were placed in foster care. In October 2002, their uncle, Marcus S., became their temporary legal guardian. At that point in time, B.S. had not disclosed that appellant had sexually assaulted him. In late November 2002, Marcus took M.S. and B.S. to see a counselor, and, toward the end of the intake session when the psychologist asked B.S. whether he had been sexually abused, B.S. said, "yes." The psychologist knew who the perpetrator was from talking with M.S. When he asked B.S. if he did the same thing to him, B.S. said, "yes." The day after B.S. met with the psychologist, B.S. disclosed the sexual abuse to Marcus. Marcus contacted Child Protective Services, who, in turn, contacted the police department.

On February 11, 2003, Dr. Sheela Lahoti, a pediatrician at the Children's Assessment Center, examined B.S. B.S. told Dr. Lahoti "Bill" had touched his whole body with his hands and "private" and, specifically, that B.S.'s buttocks, mouth, and back were touched with appellant's "private." B.S. told Lahoti that he did not know how many times this had occurred, but the last time was in 2001. B.S. stated the contact hurt, but he did not bleed. The only abnormality Dr. Lahoti observed was some mild redness around the anus.

On July 15, 2003, the grand jury returned five indictments containing charges against appellant summarized as follows:

### Trial Court Cause No. 955262

On or about August 15, 2002, appellant caused the penetration of the anus

of M.S. by placing his sexual organ in the anus of M.S.;

On or about August 15, 2002, appellant caused the anus of M.S. to contact the sexual organ of appellant.

### Trial Court Cause No. 955263

On or about August 15, 2002, appellant caused the penetration of the mouth of M.S. with the sexual organ of appellant;

On or about August 15, 2002, appellant caused the mouth of M.S. to contact the sexual organ of appellant.

### Trial Court Cause No. 955264

On or about August 15, 2002, appellant caused the penetration of the female sexual organ of M.S. by placing his sexual organ in the female sexual organ of M.S.;

On about August 15, 2002, appellant caused the penetration of the female sexual organ of M.S. by placing his finger in the female sexual organ of M.S.;

On or about August 15, 2002, appellant caused the sexual organ of M.S. to contact the sexual organ of appellant.

### Trial Court Cause No. 955265

On or about August 3, 1997, appellant caused the penetration of the anus of B.S. by placing his sexual organ in the anus of B.S.;

On or about August 3, 1997, appellant caused the anus of B.S. to contact the sexual organ of appellant.

### Trial Court Cause No. 955266

On or about August 3, 1997, appellant caused the penetration of the mouth of B.S. with the sexual organ of appellant;

On or about August 3, 1997, appellant caused the mouth of B.S. to contact the sexual organ of appellant.

Appellant pleaded not guilty in each cause, and the five causes were tried together to a jury. At trial, the State presented testimony from the following witnesses: (1) Dr. Ferrer, who conducted the initial sexual assault examination of M.S.; (2) Officers Stacy Romano and Blake Present, who handled M.S.'s complaint of alleged sexual abuse; (3) M.S.; (4) Debbie S.; (5) Tiffany G., the outcry witness for M.S.; (6) Ellen Taft, a nurse who performed a sexual assault examination of M.S.; (7) Officer Matthew Dexter, who investigated the sexual abuse allegations of B.S.; (8) B.S.; (9) Alfred; (10) Frank M., Alfred's brother-in-law; (11) Mary M., M.S. and B.S.'s nine-year-old cousin; (12) Marcus S.; (13) Dr. Lahoti, the pediatrician who examined B.S.; (14) Daniel Sanders and Audrey King, psychologists; and (15) Judy Rambur, a psychologist at the Children's Assessment Center. The defense presented the testimony of Virginia Hendrix, appellant's mother, and Reagan Martinez, appellant's uncle.

All five causes were submitted to the jury in the same charge. For each cause number, the trial court set forth the allegations in the disjunctive.[2] Appellant re-

---

2. For example, the following charge for trial court cause number 955262 was submitted to the jury:

**Cause No. 955262**

Now, if you find from the evidence beyond a reasonable doubt that on or about the 15th day of August 2002, in Harris County, Texas, the defendant did then and there unlawfully, intentionally or knowingly cause the penetration of the anus of [M.S.], a person younger than fourteen years of age and not the spouse of the defendant, by placing his sexual organ in the anus of [M.S.];

**or**

If you find from the evidence beyond a reasonable doubt that on or about the 15th

quested that the court submit lesser included offenses of indecency with a child by contact and by exposure for each cause number. The trial court submitted the lesser included offense of indecency by contact in cause number 955264, but denied appellant's request to submit the lesser included offenses in the remaining four causes.

The jury found appellant guilty as charged in all five causes and assessed punishment at life imprisonment in each cause. The trial court ordered each of the sentences to run consecutively.

## DISCUSSION

### Point of Error One: Disjunctive Jury Charge

In his first point of error, appellant contends the trial court erred in charging the jury in the disjunctive for each cause number. He contends the charge submitted permitted the jury to convict him without reaching a consensus as to which paragraph of the indictment the State had proven beyond a reasonable doubt, resulting in a less than unanimous verdict.

■■■ Texas law requires a unanimous jury verdict in felony criminal cases. TEX. CONST., art. V, § 13; TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp.2004); see also Molandes v. State, 571 S.W.2d 3, 4 (Tex.Crim.App.1978) (discussing constitutional right to unanimous verdict in felony cases); Phillips v. State, 130 S.W.3d 343, 351–52 & nn. 6–7 (Tex.App.-Houston [14th Dist.] 2004, pet. filed) (noting right to

> day of August 2002, Harris County, Texas, the defendant did then and there unlawfully, intentionally or knowingly cause the anus of M.S., a person younger than fourteen years of age and not the spouse of the defendant, to contact the sexual organ of the defendant;
> then you will find the defendant guilty as charged in the indictment.

unanimous verdict is found in the Texas Constitution). Generally, instructing the jury on alternative theories of committing the same offense does not violate the unanimity requirement. Martinez v. State, 129 S.W.3d 101, 103 (Tex.Crim.App.2004); Kitchens v. State, 823 S.W.2d 256, 258 (Tex.Crim.App.1991). Charging on alternative theories, however, differs from charging on separate offenses involving separate incidents. Martinez, 129 S.W.3d at 103. The latter runs afoul of the unanimity requirement. See Francis v. State, 36 S.W.3d 121, 125 (Tex.Crim.App.2000) (holding that instances of indecency with a child constituted separate offenses against the same victim, and it was impermissible to charge the jury in the disjunctive).

Appellant contends the jury charge for each cause alleged separate offenses in the disjunctive and not alternative theories of committing the same offense. In support he relies on three cases: Vick v. State, 991 S.W.2d 830 (Tex.Crim.App.1999); Francis v. State, 36 S.W.3d 121 (Tex.Crim.App. 2000); and In re M.P., 126 S.W.3d 228 (Tex.App.-San Antonio 2003, no pet.). We begin our analysis of the alleged charge error by examining these three cases.

In Vick, in the context of deciding a double jeopardy question, the Texas Court of Criminal Appeals concluded that the Legislature intended each separately described act proscribed by Penal Code section 22.021 to constitute a separate statutory offense. 991 S.W.2d at 832–33. Section 22.021 provides in relevant part:

(a) A person commits an offense:

> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."
> (Emphasis added).

(1) if the person:

. . .

(B) intentionally or knowingly:

(i) causes the penetration of the anus or sexual organ of a child by any means;

(ii) causes the penetration of the mouth of a child by the sexual organ of the actor;

(iii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

(2) if:

. . .

(B) the victim is younger than 14 years of age. . . .

TEX. PEN.CODE ANN. § 22.021(a) (Vernon Supp.2004).

■ In reaching the conclusion that section 22.021 describes separate offenses, the Texas Court of Criminal Appeals reasoned:

Article 22.021 is a conduct-oriented offense in which the legislature criminalized very specific conduct of several different types. Also, the statute expressly and impliedly separates the sections by "or," which is some indication that any one of the proscribed conduct provisions constitutes an offense. A more compelling demonstration of legislative intent is reflected in the specific conduct prohibited in the four sections applicable to this case. Section (i) prohibits penetration of a male or female child's anus or the sexual organ of a female child. The focus is on penetration of the child's genital area. Somewhat related is section (ii), which prohibits penetration of the child's mouth by the defendant's sexual organ. Both section (i) and section (ii) concern penetration of the child, one focusing on the genital area, and the other on the mouth. In contrast, sections (iii) and (iv) address penetration and contact of another in a sexual fashion, by the sexual organ or anus of the child. The statute criminalizes many types of sexually assaultive conduct with a child. Yet, each section usually entails different and separate acts to commit the various, prohibited conduct. This specificity reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct. An offense is complete when a person commits any one of the proscribed acts. In sum, Sec. 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to distinguish and separate different conduct; and its various sections specifically define sexual conduct in ways that usually require different and distinct acts to commit. These considerations lead us to conclude that the Legislature intended that each separately described conduct constitutes a separate statutory offense.

*Vick*, 991 S.W.2d at 832–33.[3]

In *Francis*, the defendant was charged with *one* count of indecency with a child in

---

**3.** The State argues on appeal that "[t]he indictments in each of the five cases alleged alternative theories of committing the same offense, not multiple offenses involving separate incidents." The State's argument is contrary to *Vick's* holding that section 22.021 describes separate offenses, and the State fails to explain why *Vick* is not controlling.

We conclude the Texas Court of Criminal Appeals' construction of the statute in *Vick* is controlling because the Legislature has not made any changes to section 22.021 in this

a single paragraph indictment.[4] 36 S.W.3d at 122. The State presented evidence of four distinct acts of indecency with a child, two acts of touching the victim's breasts and two acts of touching the victim's genitals, with each act occurring at a different date and time. *Id.* The State elected to pursue a conviction based on two separate incidents, one involving touching the victim's breasts and one involving touching the victim's genitals. The jury charge inquired whether the defendant engaged "in sexual contact by touching the breast or genitals." *Id.* at 124. The *Francis* court found two separate offenses were submitted erroneously to the jury in the disjunctive. *Id.* at 125. "By doing so, it is possible that six members of the jury convicted appellant on the breast-touching offense (while the other six believed he was innocent of the breast-touching) and six members convicted appellant on the genital-touching offense (while the other six believed he was innocent of the genital-touching)." *Id.*

In re *M.P.*, the final case cited by appellant, involves a challenge to the jury charge in an aggravated sexual assault case. 126 S.W.3d at 231. In *M.P.*, the juvenile defendant was charged with a single offense, and, as described by the appellate court, the jury charge contained the following paragraphs:

Paragraph A: M.P. caused the penetration of the mouth of M.R. by placing his sexual organ in M.R.'s mouth, or

Paragraph B: M.P. caused the mouth of M.R. to contact his sexual organ, or

Paragraph C: M.P. caused the anus of M.R. to contact his sexual organ, or

Paragraph D: M.P. caused the sexual organ of M.R. to contact his sexual organ.

*Id.* at 229–30. Relying on *Vick* and *Francis*, the San Antonio Court of Appeals held the trial court erred by submitting the charge in the disjunctive because "by submitting these offenses in the disjunctive it is possible that some jurors chose to find M.P. guilty of one of the offenses and some jurors chose another offense and still others another." *Id.* at 231.

In this case, appellant was charged with five separate indictments in five separate cause numbers. With the exception of trial court cause number 955264, the charges submitted for the four other causes contained two alternatives: (1) causing *penetration* of a single body part of one victim by appellant's sexual organ; or (2) causing the same body part of the same victim to *contact* appellant's sexual organ. The four charges did not require the jury to unanimously agree upon one of the two alternatives, penetration or contact, upon reaching its verdict. Thus, it is possible that some of the jurors could have found appellant guilty of penetration, and some of the

---

regard since *Vick*, and "[w]hen the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute." *Marin v. State*, 891 S.W.2d 267, 271–72 (Tex.Crim.App.1994).

4. Texas Penal Code section 21.11, which proscribes indecency with a child, provides in relevant part the following:

(a) A person commits an offense if, with a child younger than 17 years and not the person's spouse, whether the child is of the same or opposite sex, the person: (1) engages in sexual contact with the child or causes the child to engage in sexual contact; or (2) with intent to arouse or gratify the sexual desire of any person: (A) exposes the person's anus or any part of the person's genitals, knowing the child is present; or (B) causes the child to expose the child's anus or any part of the child's genitals. Tex. Pen.Code Ann. § 21.11(a) (Vernon 2003).

jurors could have found appellant guilty of contact.

■ However, with respect to cause numbers 955262, 955263, 955265, and 955266, the penetration alleged also necessarily included contact. *See Vick,* 991 S.W.2d 830, 834 n. 2 (stating "penetration of the genitals necessarily includes contact") Therefore, in these four causes, the jury, at a minimum, unanimously found appellant guilty of contact.[5] We conclude that unlike *Vick, Francis,* and *M.P.,* the charges submitted in cause numbers 955262, 955263, 955265, and 955266 did not deprive appellant of a unanimous verdict because all of the jurors who believed there was penetration necessarily also believed that antecedent contact had occurred, and a non-unanimous verdict was not possible. Thus, there was no error implicating appellant's right to a unanimous verdict in cause numbers 955262, 955263, 955265, and 966266.

■ Trial court cause number 955264, however, presents a different situation because in addition to being charged on the lesser included offense of indecency with a child by contact, the jury was charged it could find appellant guilty:

[I]f you find from the evidence beyond a reasonable doubt that on or about the 15th day of August 2002, in Harris County, Texas, the defendant did then and there unlawfully, intentionally or knowingly **cause the penetration of the female sexual organ of [M.S.],** a person younger than fourteen years of age and not the spouse of the defendant, **by**

**placing his sexual organ in the female sexual organ of [M.S.];**
 or
If you find from the evidence beyond a reasonable doubt that on or about the 15th day of August 2002, in Harris County, Texas, the defendant, did then and there unlawfully, intentionally or knowingly **cause the penetration of the female sexual organ of [M.S.],** a person younger than fourteen years of age and not the spouse of the defendant, **by placing his finger in the female sexual organ of [M.S.];**
 or
If you find from the evidence beyond a reasonable doubt that on or about the 15th day of August 2002, in Harris County, Texas, the defendant did then and there unlawfully, intentionally or knowingly **cause the sexual organ of [M.S.],** a person younger than fourteen years of age and not the spouse of the defendant, **to contact the sexual organ of the defendant;**
 then you will find the defendant guilty as charged in the indictment.

(Emphasis added.)

By submitting the above three offenses in the disjunctive, it is possible that some jurors found appellant guilty of digital penetration of M.S.'s sexual organ and other jurors chose to find appellant guilty of penetrating or contacting M.S.'s sexual organ with his sexual organ. *See* TEX. PEN. CODE ANN. § 22.021(a)(1)(B)(i), (iii); *M.P.,* 126 S.W.3d at 230–31. Unlike the other four charges describing penetration and contact by the same means, the charge in

---

5. We note that the prosecutor argued with regard to one of the charged offenses that:
 For [M.S.] we have penetration for mouth, contact or penetration. And you don't have to agree which way the State proved it, still a guilty verdict if six believe he contacted mouth and six believe that he penetrated her with his sexual organ, it is still guilty of aggravated sexual assault because she is so young. The law says penetration or contact, it's still a guilty verdict. So you don't need to spend a whole lot of time about whether it's penetration or contact.

cause number 955264 disjunctively submits two distinct means of penetrating M.S.'s sexual organ, digital and genital, and sexual organ to sexual organ contact.[6] We conclude appellant was entitled to a unanimous jury verdict, and the trial court erred in submitting this charge in the disjunctive. *See id.; Midence v. State,* 108 S.W.3d 564, 565 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

### Harm Analysis

■ Having found error in the court's charge, we must determine whether sufficient harm resulted from the error to require reversal. Appellant concedes that he did not object to the jury charge, and, therefore, we may reverse only "only if the error is so egregious and created such harm that [appellant] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). An appellate court must examine the relevant portions of the entire record to determine whether appellant suffered any actual harm as a result of the error. *Hisey v. State,* 129 S.W.3d 649, 653 (Tex.App.-Houston [14th Dist.] 2004, pet. granted). We are to determine the actual degree of harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171.

The Texas Constitution guarantees due course of law and provides that a defendant charged with a felony must be convicted by a unanimous jury. *See* TEX. CONST. art. I, § 19, art. V, § 13; TEX.CODE CRIM. PROC. ANN. art. 36.29; *see Kitchens,* 823 S.W.2d at 258 n. 2; *Midence,* 108 S.W.3d at 565; *Hanson v. State,* 55 S.W.3d 681, 693 (Tex.App.-Austin 2001, pet. ref'd). The Texas Penal Code requires that "no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." TEX. PEN.CODE ANN. § 2.01 (Vernon 2003).

■ The errors in the charge for cause number 955264 enabled the jury to possibly return a non-unanimous guilty verdict. Because the erroneous charge made it possible for the jury to return a less than unanimous guilty verdict, we find the charge error was harmful. *See Clear v. State,* 76 S.W.3d 622, 623–24 (Tex.App.-Corpus Christi 2002, no pet.) (holding submission of disjunctive charge instructing the jury to find the defendant guilty of aggravated sexual assault if it found that he either penetrated the child's female sexual organ with his finger or penetrated or contacted it with his sexual organ constituted egregious harm because it deprived the defendant of his right to a unanimous jury verdict "in that we cannot determine that the jury was unanimous in finding [the defendant] guilty of either penetration offense.")

Accordingly, we sustain appellant's first point of error as to trial court cause number 955264, and reverse the judgment of the trial court and remand cause number 955264 for further proceedings consistent with this opinion. As to trial court cause numbers 955262, 955263, 955265, and 966266, we conclude there was no error and overrule appellant's first point of error as to these four causes.

---

**6.** As discussed *supra,* section 22.021 describes separate offenses, and an offense under this section is complete when a person commits any *one* of the proscribed acts. To ensure a jury's verdict is unanimous, each offense should be submitted separately, and the jury should be instructed to reach a unanimous verdict as to each offense for which the jury finds guilt beyond a reasonable doubt.

### Points of Error Two and Three: Refusal to Submit Lesser Included Offenses

In his second and third points of error, appellant challenges the trial court's refusal to submit the lesser included offenses of indecency with a child by exposure and indecency with a child by contact. Appellant requested that these lesser included offenses be submitted in each cause. The court submitted indecency by contact in cause number 955264, in which digital and penile contact were charged in the disjunctive. As to the remaining four causes, the trial court denied appellant's request and responded, "[Y]ou can't have a lesser of penile contact with anything. That's not indecency if it's penile contact, that's aggravated sexual assault."

To determine whether a defendant is entitled to a lesser included offense instruction, a two-prong test applies: (1) the lesser included offense must be included within the proof necessary to establish the offense charged; and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense. See Arevalo v. State, 970 S.W.2d 547, 548 (Tex.Crim.App. 1998); Rousseau v. State, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993). Indecency with a child may be a lesser included offense of aggravated sexual assault on a case-by-case basis. See Cunningham v. State, 726 S.W.2d 151, 153 (Tex.Crim.App. 1987). "What must be decided in light of the offense charged and the facts proved is whether in this cause indecency with a child is a lesser included offense of the one alleged." Id. (citing Campbell v. State, 571 S.W.2d 161 (Tex.Crim.App.1978)).

Here, the first prong of the test is satisfied if the evidence at trial raises the issue that the defendant intended to arouse or gratify his sexual desire while in the course of committing the alleged penetration or contact. See id. at 154–55; see also Ochoa v. State, 982 S.W.2d 904, 908 (Tex.Crim.App.1998) (in context of double jeopardy case, stating a charge on the lesser included offense of indecency with a child, in addition to aggravated sexual assault, is required if the evidence at trial raised the issue that the defendant intended to arouse or gratify his sexual desire while in the course of committing the alleged penetration or contact). In the present case, there is ample evidence from which a rational fact finder easily could infer that when appellant made sexual contact with the complainants, his conduct included an intent to arouse or gratify his own sexual desire. See Cunningham, 726 S.W.2d at 154 (citing cases containing evidence comparable to evidence in present case).

As to the second prong, for a defendant to be entitled to a lesser included offense instruction on indecency with a child, there must be some evidence in the record that would permit a jury rationally to find that, if the defendant is guilty, he is guilty only of indecency with a child. See Rousseau, 855 S.W.2d at 673–75; Easter v. State, 867 S.W.2d 929, 941 (Tex. App.-Waco 1993, pet. ref'd). This requirement may be satisfied (1) if evidence either affirmatively refutes or negates an element establishing the greater offense, or (2) the evidence on the issue is subject to two different interpretations, and one of the interpretations negates or rebuts an element of the greater. Schweinle v. State, 915 S.W.2d 17, 19 (Tex.Crim.App. 1996). Anything more than a scintilla of evidence from any source is sufficient to entitle a defendant to submission of the issue, and this court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. See id. at 18; Havard v. State, 800 S.W.2d 195, 216 (Tex.Crim.App.1989); Upchurch

*v. State,* 23 S.W.3d 536, 538 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). The Court of Criminal Appeals has stated:

It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. Rather, there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted.

*Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim.App.1997).

Appellant contends the following evidence permitted the jury to find appellant was guilty *only* of indecency by contact or by exposure: (1) medical testimony and records indicating normal physical examinations with no evidence of anal or oral penetration; (2) testimony by both children involving incidents lacking penetration, such as touching their anal or genital areas and masturbation in their presence; (3) a cousin's testimony appellant touched B.S. and M.S. and that sometimes M.S. was clothed when the touching occurred; (4) expert testimony that children often confuse penetration with mere rubbing or friction on their body parts; and (5) the children's medical records containing numerous statements by the children that they had been touched on their sexual organs and anuses.

█ The evidence cited by appellant is not inconsistent with and does not refute the evidence of aggravated sexual assault in this case. B.S. and M.S. both testified that appellant penetrated their mouths and anuses with his sexual organ. M.S. also testified that appellant penetrated her sexual organ with his sexual organ. Their testimony is not subject to different interpretations. The additional evidence cited by appellant showing that there also was inappropriate touching and masturbation does not negate or rebut the penetration element of the greater offense of aggravated sexual assault.

As to the expert testimony cited by appellant, there was medical testimony from experts stating that a normal exam was not inconsistent with the type of abuse about which B.S. and M.S. complained. Additionally, the medical expert testimony that children may often confuse penetration with rubbing or friction does not rebut the specific testimony by M.S. and B.S. that appellant penetrated their mouths and anuses, and, in M.S.'s case, her sexual organ.

Although there may have been evidence to support appellant's claim that he committed the lesser included offense of indecency, we find no conflict raised by the evidence that would enable a rational finder of fact to conclude that appellant was guilty *only* of the lesser included offenses of indecency with a child by exposure or by contact. Accordingly, we hold the trial court did not err in denying appellant's requests for instructions on the lesser included offenses and overrule points of error two and three.

**Point of Error Four: Cumulation of Life Sentences**

In his fourth point of error, appellant challenges the trial court's order cumulating his five life sentences. Appellant contends that the trial court erred by cumulating his sentences because the indictments in cause numbers 955265 and 955266 allege offense dates predating the effective date of the statute authorizing cumulation, and the jury charge permitted the jury to base its verdicts on offenses committed any time within the ten-year period of limitations. Additionally, appellant complains of the State's failure to elect a "particular date for conviction of any of the myriad offenses brought out by the evidence."

We first address appellant's complaint regarding the State not electing a particular date. Generally, when the evidence shows two or more acts of sexual assault, each of which is an offense for which the defendant may be convicted, and the indictment charges only one offense, *if* the accused makes a motion for election, the State is required to elect which act it will rely upon to secure a conviction. *Crawford v. State*, 696 S.W.2d 903, 906 (Tex.Crim.App.1985); *Bates v. State*, 165 Tex.Crim. 140, 305 S.W.2d 366, 368 (1957). This case involves repeated sexual assaults against B.S. and M.S. The record reflects no request by appellant in the trial court that the State elect the separate acts upon which it was relying for a conviction. The absence of a request for election by appellant waives this issue on appeal. *See* Tex. R.App. P. 33.1; *Gallegos v. State*, 756 S.W.2d 45, 47 (Tex.App.-San Antonio 1988, pet. ref'd). We overrule this part of point four.

We next address appellant's contention that the trial court erred in cumulating the sentences for causes 955265 and 955266. Appellant raises the cumulation issue for the first time on appeal. Because "[a]n improper cumulation order is, in essence, a void sentence, and such error cannot be waived," we examine whether it was error for the trial court to cumulate these two sentences. *See LaPorte v. State*, 840 S.W.2d 412, 415 (Tex.Crim.App. 1992); *Nicholas v. State*, 56 S.W.3d 760, 764 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *see also Levy v. State*, 818 S.W.2d 801, 802 (Tex.Crim.App.1991) (holding sentences not authorized by law are void and that a defect which renders a sentence void may be raised at any time).

Texas Penal Code section 3.03 addresses when sentences for offenses arising out of the same criminal episode are to run concurrently or consecutively. Tex. Pen.Code

Ann. § 3.03 (Vernon 2003). As a general rule, when a defendant is convicted of multiple offenses that have been properly joined and prosecuted in a single trial, such sentences must run concurrently. Tex. Pen.Code Ann. § 3.03(a). In 1997, the legislature carved out several exceptions to this general rule. Tex. Pen.Code Ann. § 3.03(b). The exception applicable to this case permits a trial court to impose consecutive sentences for a defendant found guilty of more than one offense arising out of the same criminal episode when each sentence is for a conviction of aggravated sexual assault of a child. Tex. Pen.Code Ann. § 3.03(b)(2)(A). This exception applies only to offenses committed on or after September 1, 1997:

(a) The change in law made by this Act applies only to an offense committed on or after the effective date [September 1, 1997] of this Act. For purposes of this section, an offense is committed before the effective date of this Act if any element of the offense occurs before the effective date.

(b) An offense committed before the effective date of this Act is covered by the law in effect when the offense was committed, and the former law is continued in effect for that purpose.

Act of June 13, 1997, 75th Leg., R.S., ch.667, § 7, 1997 Tex. Gen. Laws 2250, 2252–53.

Appellant asserts that the pre-September 1, 1997 offense date recited in the indictments and judgments for causes 955265 and 955266 bars cumulation of the two sentences. Both indictments state that the offenses against B.S. occurred "on or about August 3, 1997," and both judgments recite an offense date of August 3,

1997.[7]

Under section 3.03, the date that appellant committed the offenses against B.S. determines whether the sentences are to run consecutively or concurrently. If the evidence shows that appellant committed the offenses against B.S. before September 1, 1997, the sentences for these offenses may not be cumulated. However, if the evidence shows the offenses were committed on or after September 1, 1997, cumulation is permitted.

▰▰▰ Typically, the date alleged in the indictment is an approximation that allows the State to prosecute a defendant for acts occurring within the limitations period. *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997); *Addicks v. State,* 15 S.W.3d 608, 611 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitations period. *Id.; see Thomas v. State,* 753 S.W.2d 688, 693 (Tex.Crim.App. 1988) ("Where an indictment alleges that some relevant event transpired 'on or about' a particular date, the accused is put on notice to prepare for proof that the event happened at any time within the statutory period of limitations."). The statute of limitations for aggravated sexual assault of a child is ten years from the eighteenth birthday of the victim. TEX.

CODE CRIM. PROC. ANN. art. 12.01(5)(B)(Vernon Supp.2004).

In his brief, appellant acknowledges that the prosecutor "accurately" informed the jury that they could base their verdicts on offenses occurring "sometime within the natural lifetime of [M.S.] and [B.S.]." The jury charge also properly permitted the jury to base its verdicts in each of the five causes on offenses occurring any time within the ten-year period of limitations.[8] We overrule appellant's sub-point regarding limitations.

▰▰▰ Appellant's primary complaint regarding cumulation is that the indictments and judgments in causes 955265 and 955266 each state an offense date of August 3, 1997, a date prior to the exception in section 3.03 allowing for cumulation, and that the pre-September 1, 1997 date renders the cumulation orders for these two causes invalid. We disagree that the August 3, 1997 offense date recited in the judgments renders the cumulation orders in these two causes invalid. The trial court had the discretion to cumulate the two sentences under section 3.03(b), as long as there was some evidence that the offenses occurred after September 1, 1997. *See Owens v. State,* 96 S.W.3d 668, 671–72 (Tex.App.-Austin 2003, no pet.) ("Although the victim's testimony sometimes conflicted as to dates of the sexual assaults, a reasonable view of the evidence as a whole supported the trial court's exercise

---

7. The indictments in cause numbers 955262, 955263, and 955264 state the offenses against M.S. occurred "on or about August 15, 2002," well after the effective date of section 3.03. Appellant does not specifically complain on appeal that cumulation of his three sentences involving M.S. was improper. Moreover, the record contains evidence indicating that appellant committed these offenses against M.S. after September 1, 1997.

8. The charge instructed the jury as follows:

The State is not bound by the specific date that the offense, if any, is alleged in the indictment to have been committed, but a conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time within the period of limitations. The limitation period applicable to the offense of aggravated sexual assault of a child is ten years from the date of the 18th birthday of the victim of the offense.

of its discretion to run [the] sentences consecutively."). Because the State used the phrase "on or about" in the indictment, it was free to prove that these offenses occurred on any date prior to the presentment of the indictment, July 15, 2003, and within the statutory limitations period, which had not expired. *See Glenn v. State*, 436 S.W.2d 344, 345–46 (Tex.Crim. App.1969); *Owens*, 96 S.W.3d at 671–72 (holding trial court has discretion to cumulate sentences under section 3.03(b) when there is some evidence that the offenses occurred after September 1, 1997); *Yebio v. State*, 87 S.W.3d 193, 195–96 (Tex.App.-Texarkana 2002, pet. ref'd) (concluding prior statute applied where evidence showed that assaults occurred during the day before the beginning of the 1997 school year (before September 1, 1997), although the indictments alleged the offenses occurred on or about September 5, 1997, and reforming the judgment to provide that the defendant's sentences run concurrently instead of consecutively).

We review the record to determine whether there is some evidence that the offenses occurred on or after September 1, 1997. The record shows that B.S. was born on November 5, 1989, and he was thirteen years old when he testified at trial. B.S. testified that the last time appellant sexually abused him was in 2001, when he was eleven years old. Dr. Lahoti corroborated B.S.'s testimony, testifying that he told her that the last time he was assaulted by appellant was in 2001. Alfred, B.S.'s father, testified that the first time he and B.S. shared a residence with appellant was in 1997, after Alfred was injured. In 1999, Alfred, B.S., M.S., and appellant all lived in the Burr Street house together, after Alfred's father passed away. The evidence showed that B.S. and appellant continued to live together and sleep in the same room up until the time of M.S.'s outcry in late August 2002.

M.S. testified that when they lived at the Burr Street house, which was after September 1, 1997, she saw appellant "[s]tick his private part in [B.S.'s] behind and mess with [B.S.'s] private part." Additionally, Marcus, the children's uncle and current legal guardian, testified about an incident that occurred on January 17, 2001, when he went to the Burr Street house and found the door to the bedroom that appellant and B.S. shared locked. When Marcus finally gained entry into the room, he noticed appellant was sweating and B.S. looked scared.

The evidence shows that the incidents of sexual abuse against B.S. continued to occur up until 2001, well after the September 1, 1997 effective date of the cumulation statute. Appellant does not address the evidence in the record showing that incidents of sexual abuse against B.S. occurred on or after September 1, 1997, and appellant has not cited any evidence, besides the offense dates recited in the indictment and judgments, showing that the offenses against B.S. occurred prior to September 1, 1997.

We conclude that, as a whole, the evidence supports the trial court's exercise of its discretion under section 3.03(b) to order appellant's sentences in causes 955265 and 955266 to run consecutively. We overrule appellant's fourth point of error.

## CONCLUSION

We affirm the judgments in trial court cause numbers 955262, 955263, 955265, and 955266, and reverse and remand cause number 955264 for further proceedings consistent with this opinion.

Hudson, J., concurs.

J. HARVEY HUDSON, Justice, concurring.

I fully join the majority's holding regarding the unanimity of the jury's verdict

as to "contact" in cause numbers 955,262; 955,263; 955,265; and 955,266. I concur in the judgment with respect to those convictions, however, to express my view that "contact" and "penetration" are merely alternative means of committing the same offense. With regard to cause number 955,264, I likewise concur with the majority's holding that the trial court committed charge error with respect to that cause. Our decision is grounded upon controlling precedent of the Texas Court of Criminal Appeals, namely, its decision in *Vick v. State*, 991 S.W.2d 830 (Tex.Crim.App. 1999). As an intermediate court, we must abide by such precedent, but I write separately to respectfully express my doubts about its cogency.

In *Vick*, the defendant was originally charged with aggravated sexual assault by penetrating the complainant's female sexual organ with his sexual organ. *Id.* at 831. The defendant was tried and acquitted of this charge. After the defendant was found not guilty, the State reindicted the defendant for the aggravated sexual assault of the same victim in the same transaction as had been alleged in the previous indictment. *Id.* However, in the new indictment the State alleged the defendant committed aggravated sexual assault by (1) contacting the complainant's female sexual organ with his sexual organ and (2) contacting the complainant's female sexual organ with his mouth. *Id.* Both the trial court and the court of appeals held the second indictment charged the defendant with the same offense for which he already had been tried and acquitted. *Id.* at 831–32. The Court of Criminal Appeals, however, disagreed. The court held the defendant had been charged with a new and different offense in the second indictment because "each section [of the statute] entails different and separate acts to commit the various, prohibited conduct." Thus, the court opined that this "specificity re-flects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct." *Id.* at 833.

For reasons set forth below, I fear the Court of Criminal Appeals has (1) seriously eroded the double jeopardy protections afforded by our state and federal constitutions, (2) unjustifiably construed the sexual assault statute differently from every other penal statute, (3) imposed an unrealistic burden upon the State to precisely predict and anticipate the evidence to be adduced at trial, and (4) created confusion and uncertainty in criminal pleadings that the legislature sought to avoid by its 1973 amendment of the Code of Criminal Procedure and its adoption of the modern penal code.

### Joinder and Pleadings under the Common Law

A universal maxim in the common law of England was "that no man is to be brought into jeopardy of his life, more than once, for the same offense." 4 WILLIAM BLACKSTONE, COMMENTARIES *329. The ageless difficulty with this noble precept, however, is attempting to define the parameters of an "offense."

Perhaps the first test ever devised under English common law for ascertaining the limits on an offense was the "same evidence test." *Ashe v. Swenson*, 397 U.S. 436, 453, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Under the "same evidence test," if substantially the same witnesses, testimony, and evidence were used in the prosecution of two separate and distinct criminal statutes, they were considered to be one offense and, thus, only one conviction could be obtained. *See Byrd v. State*, 90 Tex. Crim. 418, 235 S.W. 891, 893 (1921) (holding that where only one transaction is involved, only one conviction can result).

An ancillary, and perhaps inevitable, concept arising from the "same evidence test" was the idea of a "criminal transaction." A "criminal transaction" is "an act, or a series of acts, proceeding from one wrongful impulse of the will"[1] or in which there is "a single guilty intent" running through and connecting the acts.[2] A criminal "offense," as that term was used in analyzing jeopardy issues, was synonymous with the phrase "criminal transaction." In each "criminal transaction" a defendant conceivably could violate several penal statutes.[3]

However, because the proof of these violations would require the "same evidence," (and thus proof of the same offense) only one conviction could be obtained out of each "criminal transaction."

This concept was further refined by what became known in Texas as the "carving doctrine." Under the "carving doctrine," the State "could carve but one offense out of the transaction." *Curtis v. State*, 22 Tex.App. 227, 3 S.W. 86, 88 (1886). Thus, the prosecutor was permitted to carve as large a statutory violation out of a single transaction as he could, but he could "cut only once." *Staples v. State*, 76 Tex.Crim. 367, 175 S.W. 1056, 1058 (1915).[4] For jeopardy purposes, therefore, an "offense" tended to have temporal and spatial limits. For example, if the defendant stole two horses from different owners but the horses were stolen at the same time and place, a conviction for the theft of one horse would bar prosecution for the theft of the other horse because the State could not "punish twice for the same offense." *See Wright v. State*, 37 Tex.Crim. 627, 40 S.W. 491, 492 (1897).

A bewildering phenomenon arose in that the term "offense" had two distinct and entirely different meanings based on its context. An "offense" was sometimes used to mean the violation of a criminal statute, *e.g.*, theft, conversion by a bailee, shoplifting, etc.[5] On other occasions, the term "offense" was used to mean the constitutional parameters of criminal conduct for double jeopardy purposes, *e.g.*, theft, conversion by a bailee, and shoplifting could constitute one offense if perpetrated in the same criminal transaction.[6] Thus, Texas

---

**1.** *Whitford v. State*, 24 Tex.App. 489, 6 S.W. 537, 537 (1887); *also Kalish v. State*, 662 S.W.2d 595, 598 (Tex.Crim.App.1983).

**2.** *Leal v. State*, 711 S.W.2d 702, 707 (Tex. App.-Corpus Christi 1986), *aff'd in part, rev'd in part on other grounds*, 782 S.W.2d 844 (Tex.Crim.App.1990).

**3.** The Court of Appeals reasoned:
> ... there may be any number of distinct [statutory] crimes in a single criminal transaction. This comes from the fact that, the words of our language being limited, while the transactions of life may almost be termed infinite in variety, and the lines to be drawn around specific offenses being necessarily incomparably more limited than the words, it is impossible that there should be an exact outline of crime whose circumference shall exactly coincide with every criminal transaction.

*Whitford*, 6 S.W. at 537.

**4.** Under the carving doctrine the "general rule" was "a party may in a criminal proceeding be held to answer for any offense, great or small, which can be legally carved out of a transaction." *Jackson v. State*, 43 Tex. 421, 423 (1875).

**5.** For example, "we find that all of the elements necessary to charge the *offense* of assault with intent to rob are contained in the indictment charging the offense of robbery by assault against the principal." *Tomlin v. State*, 155 Tex.Crim. 207, 233 S.W.2d 303, 304 (1950) (emphasis added).

**6.** For example, "Under the doctrine of carving in this State the prosecuting attorney may carve as large an *offense* out of a single transaction as he can, but he must cut only once, and the State can carve but one conviction for the same *offense*." *Fleming v. State*, 168 Tex. Crim. 595, 330 S.W.2d 457, 459 (1959) (emphasis added).

jurisprudence is filled with such confusing statements as, "There must not only be prior *offenses* [*i.e.*, statutory violations] but prior convictions, not of the same *offense* [*i.e.*, jeopardy limited conduct], but of an *offense* [*i.e.*, statutory violation] of a like character as that for which the accused is being tried." *Brittian v. State*, 85 Tex. Crim. 491, 214 S.W. 351, 352 (1919) (emphasis added).[7]

Another difficulty presented by this scheme is that it put a tremendous burden upon the prosecution to correctly anticipate variances in the evidence. For example, a defendant might commit two penal violations in a single act as where he commits both rape and incest at the same moment. *See Hunt v. State*, 123 Tex. Crim. 559, 59 S.W.2d 836, 840 (1933). In this circumstance, if he were charged only with rape, the defendant might offer some evidence that the act was consensual, but if

he were charged only with incest, the defendant might produce some evidence challenging the familial relationship between himself and the victim. Exacerbating this problem was the common law rule that only one offense could be alleged (and, thus, only one conviction could be obtained) in a single indictment. *Watson v. State*, 900 S.W.2d 60, 63 (Tex.Crim.App. 1995).[8]

To promote justice, the Texas legislature provided that allegations of several statutory violations, all committed in the same "criminal transaction" and, thus, all qualifying as the same offense, could be pled in separate counts in the same indictment.[9] From 1879 until 1966, the Code of Criminal Procedure provided that an indictment "may contain as many counts, *charging the same offense*, [*i.e.*, the same transaction] as the attorney who prepares it may think necessary to insert."[10] In 1966, the Code

---

7. Despite this unfortunate linguistic imprecision, it is manifest in common law that several *statutory offenses* may constitute *the same offense for jeopardy purposes*. For example, Blackstone observes that "a conviction of manslaughter, on an appeal, is a bar even in another appeal, and much more in an indictment, of murder; for the fact prosecuted is the same in both, though the offenses differ in colouring and in degree." Blackstone at *330. To lessen the confusion, I shall hereafter refer to statutory "violations" and jeopardy limited "offenses."

8. This doctrine was colorfully and emphatically embraced by the Court of Appeals:

Can defendant be convicted of two felonies under the same indictment, and be punished for each? The learned trial judge admits in his argument that there is no precedent for such a proceeding as the one at bar to be found in the Texas decisions, nor, indeed, can any well-considered case be found in any state except in those courts in which the judge assesses the punishment, and where he is limited in the aggregate to the highest punishment that can be given upon any one count. We have no such law in Texas. We have no desire to establish any such precedent.... If that could be

done, a man could be crushed by accumulating charges, or injured by their solemn presentation to the jury.
*Crawford v. State*, 31 Tex.Crim. 51, 19 S.W. 766, 767 (Ct.App.1892)

9. "The object in inserting various counts in an indictment is not to secure separate convictions for as many counts, but to meet the various phases of the testimony; and it is permissible and proper to charge all the felonies which go to make up the offense committed by the defendant, but not to charge different offenses committed at different times and in different transactions. * * * Where two or more felonies are charged in the same indictment, the presumption is they are parts of the same transaction, and are to be sustained by the same evidence; and while they all may be submitted to a jury, there can be but one conviction which, as it were, appropriates the guilty intent which runs through and connects these several acts or offenses and makes them one." *Crawford*, 19 S.W. at 767.

10. REVISED STATUTES OF TEXAS, 16th Leg. (1879) (emphasis added). Article 433 of the 1879 Code of Criminal Procedure provided:
An indictment or information may contain as many counts, charging the same offense,

of Criminal Procedure was altered slightly to provide that an indictment "may contain as many counts *charging the same offense* as the attorney who prepares it, acting in good faith, may think necessary to insert, *but may not charge more than one offense.*" [11] The rationale being that the State ought to be permitted to allege all of the various statutory violations arising in a single criminal transaction (*i.e.,* in a single "offense") in one indictment to meet the contingencies of evidence that might develop in trial with the view of securing but one conviction. [12]

Thus, for more than a century, the State was permitted to include in one indictment as many distinct penal violations occurring during the same criminal transaction as it, in good faith, believed necessary and prudent to meet all the possible contingencies of the evidence. The State could not, however, join in one indictment offenses alleged to have been committed in different criminal transactions. The general rule was that only one conviction could be obtained in a single trial. [13]

## The 1973 Amendments

In 1973, the rules regarding joinder were dramatically altered when the legislature adopted a new penal code and amended the code of criminal procedure. A variety of interests were served by the new legislation. Judicial resources were conserved in that different offenses, for the first time, could be included in a single indictment. Thus, multiple convictions could be obtained in one trial. Variances between the *allegata* and the *probata* were reduced by granting the State the flexibility to allege in a single count all the various manner and means by which the proof might show the defendant committed the offense. [14] Technical pleading errors were

---

as the attorney who prepares it may think necessary to insert, and an indictment or information shall be sufficient if any one of its counts be sufficient.

*Id.* This language was carried forward in the 1895, 1911, and 1925 Codes of Criminal Procedure. See Art. 469 C.C.P., REVISED CIVIL STATUTES OF THE STATE OF TEXAS, 24th Leg. (1895); Art. 481 C.C.P., 2 VERNON'S CRIMINAL STATUTES OF TEXAS (1916); Art. 417 C.C.P., 1928 COMPLETE TEXAS STATUTES (Vernon 1928).

11. Acts 1965, 59th Leg. p. 317, ch. 722, § 1, eff. Jan. 1, 1966.

12. "In theory every count is an indictment for a distinct offense; but in fact several counts are resorted to and the offense stated in different forms and in different circumstances to meet the evidence adduced on the trial, but in no event could there be in such cases more than a single punishment." *Crawford,* 19 S.W. at 767. For example, in *Johnson v. State,* 52 Tex.Crim. 201, 107 S.W. 52, 53 (1907), the court held that in the case of a burglary committed at twilight it was permissible for the State to allege burglary at night and burglary in the daytime in the same indictment (although these were distinct offenses at that time) to meet all the possible contingencies that might arise under the facts developed at trial.

13. *See Caldwell v. State,* 122 Tex.Crim. 613, 56 S.W.2d 883, 885 (1932) (holding it is "the general rule that the accused cannot be convicted for two felonies on one trial under one indictment."); *see also Crawford,* 19 S.W. at 767 ("In an indictment for felony different counts are drawn with a view to one and the same transaction, so that some one count may be found on the trial to be in accordance with the evidence. This is legitimate, but it sometimes happens that the prosecutor's object in inserting different counts is really to prosecute the defendant for separate offenses by one indictment. This he has no right to do, and when ascertained before the trial the court will defeat his design.")

14. For example, if the evidence shows the victim died of blunt trauma to the brain, and there is found near the body a liquor bottle, a stick, and other household objects like pots and pans, how should the State proceed? If the State alleges the murder was committed by striking the deceased with the liquor bottle, the defendant might testify at trial that he actually used the stick. If the State alleges

lessened by the legislature's broad definitions of penal offenses. Finally, this was achieved without impinging upon the defendant's constitutional right to be apprised of the specific offense with which he has been accused.

At the heart of its reforms, the legislature drafted penal violations so broadly that each violation constitutes a single offense for jeopardy purposes. The new penal code, for example, consolidated the former prohibitions against "theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property" into the single offense of theft. TEX. PEN.CODE ANN. § 31.02 (Vernon 1994). This innovation eliminated the former linguistic confusion regarding the term "offense." Now, a statutory "offense" is ordinarily intended to be synonymous with the parameters of a jeopardy limited "offense."

Today, two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode. TEX.CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989).[15] A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense. TEX. CODE CRIM. PROC. ANN. art. 21.24(b) (Vernon

1989). The new scheme preserves the defendant's right to insist upon a separate trial for each count, but it also encourages judicial efficiency by providing the incentive of concurrent punishments if the defendant agrees to the joinder of multiple offenses. TEX. PEN.CODE ANN. §§ 3.03 & 3.04 (Vernon 1994). These innovative reforms, however, were gravely undermined by the decision in *Vick v. State*.

### *Vick v. State*

In *Vick*, the Court of Criminal Appeals turned back the clock. Instead of one offense of sexual assault, the Court of Criminal Appeals has now created at least eight (and perhaps more) distinct crimes, *i.e.*, (1) sexual assault by penetration of the sexual organ or anus of an adult victim, (2) sexual assault by penetration of the mouth of an adult victim with the defendant's sexual organ, (3) sexual assault by causing one adult person's sexual organ to contact or penetrate the mouth, anus, or sexual organ of another adult person, (4) sexual assault by penetration of the anus or sexual organ of a child by any means, (5) sexual assault by penetration of the mouth or a child with the defendant's sexual organ, (6) sexual assault by causing the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, (7) sexual assault by causing the anus of a child to contact the mouth, anus, or sexual organ of another person, and (8)

---

the murder was committed by striking the deceased with the stick, the jury might have some doubt as to whether or not the defendant used a frying pan. In such a case it is permissible for the indictment to allege that the defendant caused the death of the deceased "by striking his head with a glass bottle and by striking his head with a piece of wood and by means and manner unknown to the Grand Jury." *See Zanghetti v. State*, 618 S.W.2d 383, 384 (Tex.Crim.App.1981).

**15.** Thus, "criminal episode" has replaced the former concept of "criminal transaction." Under the current penal code, a "criminal episode" means the commission of two or more offenses (1) committed pursuant to the same transaction; (2) committed pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (3) that are the repeated commission of the same or similar offense. TEX. PEN.CODE ANN. § 3.01 (Vernon 2003).

sexual assault by causing the mouth of a child to contact the anus or sexual organ of another person. Surely, this was not the intent of the legislature.

The Court of Criminal Appeals based its opinion on the fact that each of the foregoing descriptions of sexual assault is set out in a separate paragraph of the statute. This is true, however, of numerous offenses. For example, using *Vick's* rationale, we also could hold the legislature intended to create six different and distinct offenses of aggravated kidnapping because the statute lists in separate paragraphs that the offense may be committed by (1) holding the victim for ransom or reward, (2) using the victim as a shield or hostage, (3) using the victim to facilitate the commission of a felony, (4) inflicting bodily injury on the victim, (5) terrorizing the victim, or (6) using the victim to interfere with the performance of a governmental function. Every reason recited in *Vick* for interpreting Sections 22.011 and 22.021 as containing distinct offenses is equally true of murder, capital murder, aggravated kidnapping, indecency with a child, injury to a child, endangering a child, terroristic threat, bigamy, interference with child custody, arson, criminal mischief, robbery, burglary, theft of trade secrets, forgery, bribery, disorderly conduct, and many other offenses in the Penal Code too numerous to mention here. However, in every other instance, outside of sexual assault, these statutory descriptions have been interpreted as various manner and means by which the offense may be committed, not a list of separate and specific offenses.

In *Vick,* the Court of Criminal Appeals did what the United States Supreme Court has said it may not do. While a State has wide latitude to define crimes and to prescribe the punishment for a given crime,
> ... the Constitution does not permit a
> State to punish as two crimes conduct

that constitutes only one "offence" within the meaning of the Double Jeopardy Clause. For whenever a person is subjected to the risk that he will be convicted of a crime under state law, he is "put in jeopardy of life or limb." If the prohibition against being "twice put in jeopardy" for "the same offence" is to have any real meaning, a State cannot be allowed to convict a defendant two, three, or more times simply by enacting separate statutory provisions defining nominally distinct crimes. If the Double Jeopardy Clause imposed no restrictions on a legislature's power to authorize multiple punishment, there would be no limit to the number of convictions that a State could obtain on the basis of the same act, state of mind, and result. A State would be free to create substantively identical crimes differing only in name, or to create a series of greater and lesser-included offenses, with the first crime a lesser-included offense of the second, the second a lesser-included offense of the third, and so on.

*Missouri v. Hunter,* 459 U.S. 359, 370–71, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

For example, if a defendant is convicted of murder by intentionally and knowingly causing the death of the deceased, can he later be prosecuted for murder of the same victim by intentionally committing a felony involving an act clearly dangerous to human life that caused the death of the deceased? He cannot, and there is no logical reason this rule should not also apply with respect to sexual assaults.

If a defendant stabs, pistol whips, and shoots the complainant, can he be convicted of multiple aggravated assaults—once by causing serious bodily injury with a knife, once by causing serious bodily injury with a gun, and once again for assault while exhibiting a deadly weapon? Absolutely not, and while a sexual assault may

be committed (like conventional assault) in a variety of ways, it is but one assault.

In addition to violating the defendant's protections under the Double Jeopardy Clause of the Fifth Amendment, *Vick* works a great hardship upon the State as well. Prior to *Vick*, the State could indict a defendant for a sexual assault and allege all of the various manner and means listed in the statute that the prosecutor reasonably believed the evidence might show and, thus, be prepared to meet all the possible contingencies in a single trial. Suppose, in a hypothetical case, that the victim was unconscious, blindfolded, incompetent, or a very young minor at the time of the assault. Physical evidence might show definite penetration of the victim's vagina. However, due to the victim's lack of knowledge, it might be equally plausible that the penetration was by the defendant's sexual organ, the sexual organ of an accomplice, a finger, a mop handle, or any number of similar objects. Yet, after *Vick*, the State must allege, at its peril, the precise method of penetration because at least three distinct and separate offenses may have been committed. These offenses either must be alleged in separate counts or contained in separate indictments. In any event, the defendant has the absolute right to a separate trial in each case giving him the opportunity at each successive trial to suggest to the jury that penetration was by some method other than that presently alleged in the indictment.

Here, the evidence shows the defendant committed numerous assaults over a period of many months. The State prosecuted appellant for several of these assaults, alleging the various manner and means in separate paragraphs. *Vick* requires us, however, to view the indictments not as containing paragraphs alleging different manner and means of committing the same offense, but as counts alleging different offenses. This interpretation does violence to the Fifth Amendment, the Texas Penal Code, and the Texas Code of Criminal Procedure. If writing on a clean slate, I would find each of the indictments presented here contain two or more paragraphs alleging different manner and means of committing an offense.

Because we are an intermediate appellate court and are bound by the holding in *Vick*, I respectfully concur in the judgment.