Opinion issued August 4, 2005










In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01266-CR
NO. 01-03-01267-CR




ALFRED LLEWELYN CARTY, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause Nos. 954561 & 950073




OPINION ON REHEARING
          We grant appellant’s motion for rehearing, withdraw our opinion issued
November 10, 2004, and issue this opinion in its place.
          Appellant, Alfred Llewelyn Carty, was charged in two separate indictments
with first-degree felony offenses of aggravated sexual assault of his six-year-old
daughter, J.C. Appellant pleaded not guilty and the cases were consolidated for trial. 
A jury found appellant guilty of both offenses. The trial court assessed punishment
at 14 years in prison for each charged offense, with the sentences to run concurrently. 
Appellant presented five issues on appeal. In his first three issues, appellant argues
that the trial court erred by (1) admitting into evidence records from the Children’s
Assessment Center; (2) admitting into evidence the testimony of Tammy Urban
regarding the complainant’s “outcry” statement; and (3) submitting a disjunctive jury
charge in cause number 01-03-01266-CR, which allowed conviction on a non-unanimous verdict. In his fourth and fifth issues, appellant asserts legal and factual
insufficiency of the evidence to support the jury’s verdict. We affirm the judgment
of the trial court in cause number 950073. We sustain appellant’s third issue, reverse
the trial court’s judgment in cause number 954561, and remand that cause for further
proceedings.
BACKGROUND
          At the time of the sexual assault, appellant and his common-law wife were
separated. Appellant had moved out of the family’s apartment and into his own
apartment sometime in the spring of 2002. The couple’s two children, six-year-old
J.C. and her brother, who was 13 years old when he testified at trial, continued to live
primarily with their mother. However, the children frequently stayed overnight at
appellant’s one-bedroom apartment, especially on weekends. On these overnight
visits, the children and appellant would sleep in the same bed. 
          Appellant was indicted for two sexual assaults of J.C. The first assault for
which appellant was indicted (“the first assault”)


 took place on or about September
1, 2002. The second assault for which appellant was indicted (“the last assault”)



took place on or about October 31, 2002.  
          J.C. testified that appellant touched her “more than once” with his “private
part” both on the outside and the inside of her sexual organ. Although J.C. used
immature terms in her testimony, the prosecutor had J.C. indicate on a girl doll what
part of her body “between the legs” referred to. The record shows that J.C. indicated
the vaginal area and vaginal opening of the doll as being “between the legs” and that
it was where she would “go number one.” The prosecutor also had J.C. indicate on
a boy doll what part of appellant’s body “his private parts” referred to. The record
shows that J.C. indicated the male genital area of the boy doll. 
          J.C. testified that, prior to placing his penis in contact with her sexual organ
and penetrating her with his penis, appellant would put Vaseline on his penis. J.C.
was asked if she saw appellant put the Vaseline on his private part, and J.C.
responded, “Sometimes, but not all the time.” J.C. testified that appellant would
touch her sexual organ with his index and middle fingers. J.C. was also asked
whether her brother was always there when appellant did this, and she responded by
saying that her brother would “[s]ometimes be somewhere else.” 
          According to the outcry witness, Tammy Urban, J.C. told her that appellant
sexually assaulted her every time she stayed overnight at his apartment. Urban
elicited details about the assaults. In describing the last assault, J.C. told Urban that
appellant pulled her nightgown up and her panties down. Appellant then put Vaseline
on and inside her sexual organ with his hand, penetrating her sexual organ with his
finger. Appellant then placed his penis in contact with J.C.’s sexual organ and then
penetrated her sexual organ with his penis and ejaculated.
          In late 2002, sometime between Thanksgiving and Christmas, J.C. informed her
mother that appellant was molesting her. There is no evidence in the record
indicating whether J.C. ever told her mother any details about the assaults. Her
mother instructed J.C. to tell her brother about the molestation, but not to tell anyone
else. After telling her mother about the abuse, J.C. never visited appellant again. 
          On April 30, 2003, an anonymous report was made to the child protective
service (“CPS”) abuse hotline. On May 14, 2003, CPS caseworker Amy McAndrew
took J.C. and her brother from school and drove them to CPS’s Children’s
Assessment Center (the “CAC”) where both children were interviewed by CPS
investigator Tammy Urban. J.C. described for Urban details of the abuse and
identified appellant as the assailant. Later, J.C. was examined by Dr. Rebecca
Girardet. Both children were placed in the care of a maternal aunt.
DISCUSSION
          The State asserts that appellant waived his rights to appeal and urges us to
dismiss. The State bases this claim on the fact that, at the time appellant and the State
agreed to a sentence recommendation, they executed standard plea agreement
documents, which included a waiver of appeal. The trial court, at that time, also
certified that appellant had entered a plea bargain and had no right to appeal. It is
obvious from the record, however, that appellant had a jury trial in both cases pursuant
to his pleas of not guilty. Further, as the State should have noted, the trial court
subsequently filed corrected documents certifying appellant’s right to appeal.
Disjunctive Jury Charge
          In his third issue, appellant asserts that the trial court erred by submitting a
disjunctive jury charge in the case involving the first assault. Appellant contends that
this error allowed him to be convicted on less than a unanimous verdict. The
indictment for the first assault alleged that appellant had assaulted J.C. in three
alternative ways: (1) by placing his sexual organ in contact with J.C.’s sexual organ; 
(2) by penetrating her sexual organ with his finger; (3) by penetrating her sexual organ
with his sexual organ. The jury charge for the case involving the first assault was
given in the disjunctive—allowing the jury to convict if it found appellant had
sexually assaulted J.C. in any one of the three alleged manners. Appellant contends
that this allowed a conviction even if the jury’s verdict was not unanimous.
          When reviewing a trial court’s jury instructions, we first determine whether the
jury charge was erroneous. Nguyen v. State, 811 S.W.2d 165, 167 (Tex.
App.—Houston [1st Dist.] 1991, pet. ref’d).
           Generally, appellant’s claim of jury charge error would be without merit. A
single indictment may present allegations of different methods of committing the
charged offense in the conjunctive and the jury may be charged in the disjunctive. 
Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); Rodriguez v. State,
89 S.W.3d 699, 702 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). There is no
general requirement that the jury reach agreement on the preliminary factual issues
that underlie the verdict. Kitchens, 823 S.W.2d at 259. “It is well settled that when
alternative theories of committing the same offense are submitted to the jury in the
disjunctive, the jury may return a general verdict if the evidence is sufficient to support
a finding under any of the theories submitted.” Bogany v. State, 54 S.W.3d 461, 463
(Tex. App.—Houston [1st Dist.] 2001, pet. ref’d). 
          However, the Court of Criminal Appeals decision in Vick v. State held that,
under Penal Code section 22.021, a charge for the offense for which appellant was
indicted was not subject to this general rule. 991 S.W.2d 830 (Tex. 1999). In Vick,
the Court of Criminal Appeals concluded that the Legislature intended each separately
described act proscribed by section 22.021 to constitute a separate statutory offense. 
Id. at 832–33. Thus, in this case, submitting the charged offenses in the disjunctive
made it possible for some of the jurors to have found that appellant guilty of digital
penetration of J.C.’s sexual organ while other jurors chose to find appellant guilty of
penetrating or contacting J.C.’s sexual organ with his sexual organ. Appellant was
entitled to a unanimous jury verdict, and we hold that the trial court erred in
submitting a disjunctive jury charge on the first assault. See Hendrix v. State, 150
S.W.3d 839, 848–49 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that
trial court erred in submitting disjunctive charge). 
          Having found error in the court’s charge on the first assault, we must determine
whether sufficient harm resulted from the error to require reversal. When, as here, a
defendant has made a timely objection and there is error, reversal is required if there
is “some harm to the accused from the error.” Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (op. on reh’g). Thus, we must reverse provided the error is
not harmless. Id. To determine whether there is harm, we must evaluate “the entire
jury charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.” Id. Some harm means any actual harm,
regardless of degree. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).
But we must measure the error’s harmfulness at least in part against the likelihood that
the verdict was actually based on another theory of culpability unaffected by the
erroneous charge. Govan v. State, 682 S.W.2d 567, 570–71 (Tex. Crim. App. 1985),
overruled on other grounds by Brown v. State, 716 S.W.2d 939, 945 (Tex. Crim. App.
1986); see also Atkinson, 934 S.W.2d 896, 897 (Tex. App.—Fort Worth 1996)
(analyzing harm after remand by Court of Criminal Appeals in Atkinson v. State, 923
S.W.2d 21, 27 (Tex. Crim. App. 1996), overruled on other grounds by Motilla v. State,
78 S.W.3d 352, 356 (Tex. Crim. App. 2002)).
          The Texas Constitution guarantees due course of law and provides that a
defendant charged with a felony must be convicted by a unanimous jury. See Tex.
Const. art. I, § 19, art. V, §13; see also Tex. Code. Crim. Proc. Ann. art. 36.29
(Vernon Supp. 2004-2005). Regarding the first assault, after examining the entire jury
charge, the jury verdict, the disputed and undisputed evidence, the weight of the
probative issues, and the arguments of counsel, we conclude that charging the jury in
the disjunctive produced at least some actual harm to appellant because the error in the
charge enabled the jury to return a non-unanimous guilty verdict. See Hendrix, 150
S.W.3d at 849.
          We sustain appellant’s third issue and therefore need not consider appellant’s
remaining issues regarding trial court cause number 954561. Thus, we will consider
appellant’s remaining issues only as they regard trial court cause number 950073.
Legal Sufficiency
          In his fourth issue, appellant complains that the evidence was legally
insufficient for the jury to find appellant guilty. In reviewing the evidence on legal
sufficiency grounds, we view the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000); Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.
Ct. 2781, 2788–89 (1979). 
          Appellant specifically argues that, even if the evidence is sufficient to support
a jury finding that he penetrated J.C.’s sexual organ with his penis, the evidence only
supports such penetration on one occasion and not two. Thus, according to appellant’s
argument, his conviction in one of the cases must be reversed because the evidence
was not legally sufficient to permit a jury to rationally find that he committed two
separate acts of penile penetration. 
          A review of the record yields legally sufficient evidence to support more than
one act of penile penetration. J.C. testified at trial that appellant touched her inside
her vagina, which she referred to as the part of her body “between the legs,” with his
“private part” “more than once.” Appellant’s assertion that J.C.’s testimony was “not
specific enough” to prove two distinct occasions of penile penetration is incorrect. 
Furthermore, Urban testified at length about the outcry statement, and her testimony
regarding J.C.’s statement was consistent with J.C.’s testimony that appellant
penetrated her sexual organ with his penis on more than one occasion. 
          We overrule appellant’s fourth issue.
Factual Sufficiency
          In his fifth issue, appellant complains that the evidence is factually insufficient
to sustain the jury’s verdicts finding appellant twice guilty of aggravated sexual
assault of a child. Because we have sustained appellant’s issue regarding the first
assault, we need not address the factual sufficiency of the evidence to support
appellant’s conviction for the last assault. Appellant admits that there is evidence
supporting guilt, but asserts that it is “too weak” and that contrary evidence exists that
renders the evidence factually insufficient. We disagree. 
           In a factual sufficiency review, we view all the evidence in a neutral light, and
we will set the verdict aside only if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust, or the contrary evidence is so strong that the standard of
proof beyond a reasonable doubt could not have been met. Escamilla v. State, 143
S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 481
(Tex. Crim. App. 2004)). The appellate court should not substitute its own judgment
for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App.
1996). 
          Although she is a child, J.C.’s testimony alone is sufficient to support
appellant’s conviction. Ruiz v. State, 891 S.W.2d 302, 304 (Tex. App.—San Antonio
1994, pet. ref’d). Urban’s testimony regarding the outcry statement corroborates J.C.’s
testimony. See Rodriguez v. State, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991)
(“[O]utcry testimony admitted in compliance with Art. 38.072 is admitted as an
exception to the hearsay rule, meaning it is considered substantive evidence,
admissible for the truth of the matter asserted in the testimony.”). This testimony
stands uncontradicted and is not “so weak that the verdict is clearly wrong and
manifestly unjust.” See Escamilla, 143 S.W.3d at 817. 
          Appellant cites as evidence “contrary to the verdict,” that J.C. did not exhibit
obvious signs of physical or emotional trauma and had no behavioral problems, that
J.C.’s brother slept in the same bed and professed ignorance of the assaults, and that
J.C. and her brother were each given a stuffed animal by “an official employed by the
government.” But Dr. Girardet examined J.C. more than four months after the last
assault and testified that most sexually abused children do not exhibit any physical
evidence of the assault—even while the abuse is ongoing. Further, Dr. Lawrence
Thompson, a clinical psychologist at the CAC, testified that some victims of child
abuse are “overtly asymptomatic” but that “there can be a lot of emotional turmoil
going on within them that just isn’t showing itself in sort of the common ways.” J.C.
testified that her brother was asleep on the floor in front of the television during one
of the assaults. Her brother testified that he was a very “heavy sleeper” when asked
by appellant’s trial counsel if he had heard anything. 
          Finally, appellant complains that a court services employee committed an
impropriety by giving J.C. and her brother “gifts prior to eliciting information.” 
Appellant seems to assert that this is evidence “contrary to the verdict.” However, the
employee gave the children the toys months after J.C.’s outcry statement accusing
appellant of the assaults. The employee was not an investigator. Her job was to
accompany J.C. to the courtroom. All this testimony, including the opinion of other
witnesses as to whether such gifts were improper when given, was in evidence for the
jurors to consider when weighing the children’s testimony.
          The evidence appellant cites as “contrary to the verdict” is either not contrary
or goes to the weight the jury gave to particular witnesses or certain testimony. The
jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight
to be given to the witnesses’ testimony. Jaggers v. State, 125 S.W.3d 661, 671 (Tex.
App.—Houston [1st Dist.] 2003, pet. ref’d). The jury may believe all, some, or none
of any witness’s testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986) (stating that jury “could choose to believe or not believe the witnesses, or any
portion of their testimony”). A jury decision is not manifestly unjust merely because
the jury resolved conflicting views of evidence in favor of the State. Cain v. State,
958 S.W.2d 404, 410 (Tex. Crim. App. 1997). After reviewing all of the evidence in
a neutral light, we do not find the evidence is so weak that the verdict is clearly wrong
and manifestly unjust, nor do we find that the contrary evidence so strong that the
standard of proof beyond a reasonable doubt could not have been met. 
          We overrule appellant’s fifth issue.
Admission of Medical Records as Business Records
          In his first issue, appellant complains that the trial court erred in admitting into
evidence, under the business records exception to the hearsay rule, the CAC’s records
regarding Dr. Girardet’s examination of J.C. We review a trial court’s ruling on the
admissibility of evidence under an abuse of discretion standard, in light of the
evidence before the trial court at the time the ruling was made, and must uphold the
trial court’s ruling if it was within the zone of reasonable disagreement. Weatherred
v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); Ellis v. State, 99 S.W.3d 783,
787 (Tex. App.—Houston [1st Dist.] 2003, pet. ref’d). 
          At trial, appellant objected to the introduction of the business records on the
basis that Dr. Girardet was not the custodian of records for the CAC. Appellant’s trial
counsel stated to the trial court, “My understanding is that [the business record] has
to be brought by a person who maintains, who has custody of the record. I could be
wrong, Judge.” 
          The predicate for the business records exception to the hearsay rule may be
established either by the custodian of records or another qualified witness. Tex. R.
Evid. 803(6); Lee v. State, 779 S.W.2d 913, 917–18 (Tex. App.—Houston [1st Dist.]
1989, pet. ref’d). Appellant argues for the first time on appeal that the business
records should not have been admitted because Dr. Girardet was not “another qualified
witness” under Rule 803(6) and, alternatively, that there was no testimony that the
CAC kept such records as a regular practice. These claims were not preserved for our
review. To preserve error for appellate review, a defendant must make a specific
objection in the trial court. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002); Tex. R. App. P. 33.1(a)(1)(A). The point of error on appeal must comport with
the specific objection made at trial. Wilson, 71 S.W.3d at 349. An objection stating
one legal basis may not be used to support a different legal theory on appeal. Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). 
          We overrule appellant’s first issue.
Admission of Testimony Regarding the “Outcry” Statement
          In his second issue, appellant complains that the trial court should not have
allowed Urban to testify about the outcry statement J.C. made during their interview
at the CAC. Appellant complains that Urban was not the first person J.C. told she was
sexually abused, and that the statement made to Urban was not reliable based on the
time, content, and circumstances under which it was made. 
          1.       First person requirement under article 38.072 
          A child-abuse victim’s statement to another is not inadmissible hearsay if the
statement describes the alleged offense and the person to whom the statement is made
is at least 18 years old and is the first person to who the child made a statement about
the offense. Tex. Code Crim. Proc. Ann. art. 38.072 (Vernon Supp. 2004-2005). A
court’s decision that the outcry statement is reliable and admissible under article
38.072 is reviewed for an abuse of discretion. Broderick v. State, 89 S.W.3d 696, 698
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). 
          At a hearing outside the jury’s presence, appellant argued that only the first
person to whom a sexually abused child made a statement qualified as the outcry
witness. Appellant argued that, because J.C.’s mother was the first person to whom
J.C. made a statement about the offense, only she could testify as to any outcry
statement under article 38.072.
          The Court of Criminal Appeals in Garcia v. State held that, at least where the
child makes only a “general allusion” of sexual abuse to the first person, but gives a
more detailed account to a second person, the second person may be the proper outcry
witness. 792 S.W.2d 88, 91 (Tex. Crim. App. 1990). In Garcia, the Court interpreted
the “first person” and “statement about the offense” language in article 38.072 to mean
that the outcry witness must be the first person, 18 years old or older, to whom the
child made a statement that in some discernible manner described the alleged offense. 
Id. Despite the fact that the child first told her teacher about her step-father’s abuse,
the Court held that the trial court properly designated another person as the outcry
witness because that person was the “first person” to whom the child actually
described the offense in a discernable manner. Id. at 91–92; accord Hayden v. State,
928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d) (holding that
child protection service worker was proper outcry witness because there was no
evidence that school counselor to whom child first made outcry statement was given
any details of alleged offense); Anderson v. State, 831 S.W.2d 50, 54 (Tex.
App.—Fort Worth 1992, pet. ref’d) (holding that mother was not proper outcry
witness, despite being first person child told of father’s abuse, because mother refused
to admit statement was made to her, refused to cooperate with authorities, and had
been convicted of related offense). The Court in Garcia stated the following:
In picking the particular wording of the “first person” requirement,
the legislature was obviously striking a balance between the general
prohibition against hearsay and the specific societal desire to curb the
sexual abuse of children . . . [and] . . . the societal interest in curbing
child abuse would hardly be served if all that “first person” had to
testify to was a general allegation from the child that something in the
area of child abuse was going on at home .
. . . 
In order to be designated as the outcry witness by the trial court, one
element that must be clearly shown by the evidence is that the victim
described the offense to that witness.
. . .
We emphasize that from this record we cannot determine what it was
that complainant told her teacher. 
 
792 S.W.2d at 91.
          A review of the record in this case yields no evidence that J.C. told her mother
the details of the charged offenses. Further, the State informed the trial court at the
article 38.072 hearing that J.C.’s mother was under indictment for failing to report
appellant’s abuse of J.C., was unavailable to talk to the prosecutor, refused to
cooperate with the police, and refused to admit that J.C. made an outcry statement to
her. Appellant did not dispute the State’s assertions. See Pitts v. State, 916 S.W.2d
507, 510 (Tex. Crim. App. 1997) (“This Court accepts as true factual assertions made
by counsel which are not disputed by opposing counsel.”). Urban was the first adult
to whom an outcry statement was made who could remember J.C.’s statement and
relate it at trial. See Foreman v. State, 995 S.W.2d 854, 858–59 (Tex. App.—Austin
1999, pet. ref’d) (holding that article 38.072 allows “the first adult who can remember
and relate at trial the child’s statement” to be the outcry witness) (emphasis added).
          2.       Reliability of the outcry statement made to Urban
          Appellant also argues that the trial court erred in admitting Urban as the outcry
witness because the outcry statement was unreliable. As a prerequisite to admitting
testimony about the outcry statement, the trial court is required to find that the
statement is reliable based on “the time, content, and circumstances of the statement.” 
Tex. Code Crim. Proc. Ann. art. 38.072 § 2(b)(2) (Vernon Supp. 2004-2005). The
phrase “time, content, and circumstances” refers to the time the child makes the
statement to the proffered outcry witness, the content of the statement, and the
circumstances surrounding the making of the statement. Broderick v. State, 89 S.W.3d
696, 699 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). 
          Appellant specifically complains that the State’s evidence showed the outcry
statement J.C. made to Urban was merely a “general allusion to sexual abuse” and that
“Urban was not familiar with any circumstances surrounding the case, or aware of any
evidence corroborating the complainant’s statement.” Appellant’s complaints are
without merit. The outcry statement J.C. made to Urban was not merely a general
allusion. It was detailed and in a “discernable manner describes the alleged offense.” 
See Garcia, 792 S.W.2d at 91. The test for reliability looks to the circumstances
surrounding the making of the statement and not the circumstances of the abuse as
appellant implies. See Broderick, 89 S.W.3d at 699.
          The evidence in the record supports the trial court’s finding that the statement
was reliable based on the time J.C.’s statement was made, the content of her statement,
and the circumstances surrounding her making the statement. J.C. made the statement
to Urban after her mother instructed her not to tell anyone other than her brother.
Urban testified that J.C. stated that she knew the difference between a lie and the truth
and promised to tell Urban the truth. J.C. described the assaults to Urban in detail and
in her own words, using immature language. Urban’s testimony about the outcry
statement was consistent with J.C.’s testimony at trial and Urban stated that she asked
J.C. open-ended, not leading, questions. 
          We hold that the trial court did not err in allowing Urban to testify as the outcry
witness. We overrule appellant’s second issue.
                                                     CONCLUSION
          We affirm the judgment of the trial court in cause number 950073. We reverse
the judgment of the trial court in cause number 954561 and remand the cause to the
trial court for further proceedings consistent with this opinion. 
 
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Hanks, and Higley.
The motion for en banc reconsideration is denied as moot.
Publish. Tex. R. App. P. 47.2(b).