

# NUMBER 13-08-342-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CARLOS CARRANZA GAONA, Appellant,

v.

THE STATE OF TEXAS, Appellee.

### On appeal from the 206th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Garza**
**Memorandum Opinion by Justice Yañez**

A jury convicted appellant, Carlos Carranza Gaona, of two counts of aggravated sexual assault of a child.[1] The trial court assessed punishment at twenty-five years'

---

[1] *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i), (ii), (iv); (a)(2)(B) (Vernon Supp. 2009).

imprisonment for each count, to be served consecutively.[2] In nine issues, which we re-group and re-number as four, appellant contends: (1) the evidence is legally and factually insufficient to support his conviction in count one; (2) the evidence is legally and factually insufficient to support his conviction in count two; (3) the jury charge erroneously permitted his conviction on a less-than-unanimous verdict on the alternative paragraphs alleged in count one; and (4) the jury charge permitting a less-than-unanimous verdict denied him a right to a fair trial guaranteed by the United States and Texas Constitutions and the code of criminal procedure. We affirm.

## I. Background

Appellant is the paternal grandfather of the victim, "Rick Garza,"[3] who was nine years old when the alleged offenses occurred.[4] Rick lived with his paternal grandparents, appellant and Maria de la Luz Gaona. On weekends, Rick frequently spent time with his father, Carlos Gaona ("Carlos"), and step-mother, Teodora Gaona ("Dora"), who lived nearby.[5] Dora's sister-in-law, Minerva Gamez, and her children, among others, also lived with Carlos and Dora.

In mid-to-late June, 2006, Carlos picked Rick up for a long weekend at Carlos and

---

[2] Appellant pleaded "true" to an enhancement paragraph. *See id.* §§ 22.021(e) (providing that aggravated sexual assault is first-degree felony); 12.32 (Vernon Supp. 2009) (providing that punishment for first-degree felony is life or five to ninety-nine years' imprisonment and maximum fine of $10,000); 3.03(b)(2) (Vernon Supp. 2009) (providing that sentences may run concurrently or consecutively for offenses committed against victim younger than seventeen at time offenses were committed).

[3] Roy Edward Estrada, a criminal investigator for the City of San Juan Police Department, testified that he assigned the victim the pseudonym "Rick Garza." Accordingly, we refer to the victim in this opinion as "Rick." *See* TEX. CODE CRIM. PROC. ANN. art. 57.02 (Vernon Supp. 2009).

[4] Rick's date of birth is March 30, 1997.

[5] Carlos testified that he and Rick's mother, Maria Luisa Soto, separated in 2000, got back together briefly in 2002, and then finally separated in 2002. Since 2002, Rick lived with his paternal grandparents.

Dora's house. The weekend family outing included a trip to a skating rink and to the mall. At the end of the weekend, as the time approached to return Rick to his grandparents' house, he became upset, began crying, and said he was afraid to go back to his grandparents' house. Rick said he was afraid of appellant because appellant had been hurting him in his "butt." Shortly thereafter, Rick's allegations were reported to Child Protective Services (CPS) and the police. Rick was subsequently interviewed at the Children's Advocacy Center and was physically examined by a Sexual Assault Nurse Examiner ("SANE") nurse.

At trial, the jury was asked to determine appellant's guilt or innocence with respect to seven counts of aggravated sexual assault of a child, as follows: (1) on June 17, 2006, appellant caused his sexual organ to contact Rick's anus or caused his sexual organ to penetrate Rick's anus (Count One); (2) on June 17, 2006, appellant caused his sexual organ to penetrate Rick's mouth (Count Two); (3) on June 17, 2006, appellant caused his finger to penetrate Rick's anus (Count Three); (4) on May 31, 2006, appellant caused his sexual organ to contact Rick's anus or caused his sexual organ to penetrate Rick's anus (Count Four); (5) on May 31, 2006, appellant caused his sexual organ to penetrate Rick's mouth (Count Five); (6) on April 30, 2006, appellant caused his sexual organ to contact Rick's anus or caused his sexual organ to penetrate Rick's anus (Count Six); and (7) on April 30, 2006, appellant caused his sexual organ to penetrate Rick's mouth (Count Seven). The jury found appellant guilty of counts one and two, and not guilty of counts three through seven.

## II. Standard of Review and Applicable Law

In reviewing the legal sufficiency of evidence, an appellate court must review all the

3

evidence in the light most favorable to the verdict, and ask whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'— not whether '*it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'"[6] The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.[7] We do not reevaluate the weight and credibility of the evidence, and we do not substitute our own judgment for the trier of fact.[8] We resolve any inconsistencies in the evidence in favor of the judgment.[9]

In conducting a factual sufficiency review, we review the evidence in a neutral light to determine whether the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or whether it is against the great weight and preponderance of the evidence.[10] Unless the record clearly reveals that a different result is appropriate, we must defer to the fact finder's determination concerning what weight to be given to contradictory testimony.[11] In conducting a factual sufficiency review, we must also consider the evidence that, according to the appellant, most undermines the jury's verdict.[12]

The testimony of a child sexual abuse victim alone is sufficient to support a

---

[6] *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

[7] *See* TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Jackson*, 443 U.S. at 318-19; *Beckham v. State,* 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).

[8] *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc); *Beckham*, 29 S.W.3d at 151.

[9] *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

[10] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

[11] *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

[12] *See Sims v. State*, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003).

conviction for aggravated sexual assault.[13] The victim's description of what happened to him need not be precise, and he is not expected to express himself at the same level of sophistication as an adult.[14] A child victim need not testify to penetration, which the State may prove through circumstantial evidence.[15] However, the testimony of a child victim alone is sufficient evidence of penetration to support a conviction.[16] There is no requirement that the victim's testimony be corroborated by medical or physical evidence.[17] Further, outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault.[18]

The State is not required to present direct evidence, such as eyewitness testimony, to establish guilt.[19] "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."[20] The law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating

---

[13] *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.–Corpus Christi 2008, no pet.); *see also Gomez v. State,* No. 13-08-157-CR, 2009 Tex. App. LEXIS 6985, at *14 (Tex. App.–Corpus Christi 2009, no pet.) (mem. op., not designated for publication).

[14] *Soto*, 267 S.W.3d at 332.

[15] *Villalon v. State,* 791 S.W.2d 130, 133 (Tex. Crim. App. 1990).

[16] *Ozuna v. State,* 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.) .

[17] *Soto*, 267 S.W.3d at 332; *Ozuna*, 199 S.W.3d at 606.

[18] *Ozuna*, 199 S.W.3d at 606 (citing *Rodriguez v. State*, 819 S.W.2d 871, 873-74 (Tex. Crim. App. 1991); *Kimberlin v. State*, 877 S.W.2d 828, 831-32 (Tex. App.–Fort Worth 1994, pet. ref'd)).

[19] *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

[20] *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Guevara*, 152 S.W.3d at 49.

circumstances is sufficient to support the conviction."[21]

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge.[22] Here, the hypothetically correct jury charge against which we measure the legal and factual sufficiency of the evidence as to Count One would ask if the appellant: (1) on or about June 17, 2006, (2) intentionally or knowingly, (3) caused his sexual organ to contact or penetrate Rick's anus. As to Count Two, the hypothetically correct jury charge would ask if the appellant: (1) on or about June 17, 2006, (2) intentionally or knowingly, (3) caused his sexual organ to penetrate Rick's mouth.

### III. The Evidence

With respect to Counts One and Two, appellant contends the evidence is legally and factually insufficient because the State adduced no evidence of the essential element of the date that the alleged acts occurred. Appellant also challenges the legal and factual sufficiency of the evidence as to Count Two on the grounds that only the testimony of Lisa Gomez, who interviewed Rick at the Children's Advocacy Center, supported the allegation that appellant penetrated Rick's mouth with his penis; according to appellant, Rick's own testimony contradicts Gomez's testimony and thus renders the evidence insufficient.

As to appellant's claim that the evidence is legally and factually insufficient because there is no evidence establishing the date the alleged events occurred, the State responds that circumstantial evidence established that the events occurred "on or about" June 17,

---

[21] *Hooper*, 214 S.W.3d at 13; *see Guevara*, 152 S.W.3d at 49.

[22] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd).

2006. Citing *Dixon v. State*, the State also notes that when young children are involved, "courts cannot impose unrealistic expectations regarding proof of when an offense actually occurred[.]"[23]

In response to appellant's legal and factual sufficiency challenge to the evidence supporting his conviction on Count Two, the State argues that the outcry testimony given by Gomez is sufficient to support a conviction.

## A. Dora Gaona

Dora testified that Rick often spent weekends at the home she shared with Carlos, Minerva Gamez (Dora's sister-in-law), and several children. On one of these weekends, Rick began crying, saying he did not want to return home to his grandparents' house. Rick told Dora and Minerva that he was afraid and that appellant was "hurt[ing] him in his butt." In demonstrating how appellant had hurt him, Rick pointed to his "butt" and said that appellant had used his "private part" to hurt his butt. Dora called Carlos into the room, and Rick restated the allegations. Dora testified that they decided to take Rick to the doctor.

## B. Minerva Gamez

Minerva testified that in June 2006, she and her children were living with Carlos and Dora, her sister-in-law. Minerva testified that in June of 2006, she and Dora were present when Rick started crying and saying he did not want to go back to his grandparents' home. Minerva testified that when Rick made statements about sexual abuse, he was "scared" and "terrified."

## C. Carlos Gaona

---

[23] *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006).

Carlos testified that he has three children: a daughter, B.G., Rick,[24] and a son, D.G.[25] Carlos has had custody of Rick since 2002, but Rick lived with his grandparents. In June 2006, Carlos picked Rick up for a weekend visit.[26] The weekend included skating and shopping; Carlos planned to return Rick to his grandparents' house on Sunday. Carlos testified that Rick made statements regarding sexual abuse. Carlos stated that Rick was "not fully awake" during the conversation. To verify what he had heard, Carlos questioned Rick a second time about the allegations twenty minutes later; Rick made the same statements. Carlos stated that Rick had been diagnosed with "MR[27] and hyperactivity," was taking Ritalin, and was seeing a psychiatrist. Carlos stated that Rick "looked terrified." Carlos testified that he took Rick to the Children's Advocacy Center at the direction of CPS personnel.

## D. Veronica Pena

Veronica Pena, an investigator with CPS, testified that she received a referral to investigate allegations of sexual abuse in this case on June 19, 2006. In accordance with standard procedure, Pena filed a report with the City of San Juan Police Department. Pena interviewed Carlos and arranged for Rick to have a sexual assault examination at the Children's Advocacy Center on June 22, 2006. Pena testified that Rick was interviewed twice at the advocacy center—initially on June 23, 2006, and a second time on June 27,

---

[24] B.G. and Rick's mother is Maria Luisa Soto.

[25] D.G.'s mother is Dora.

[26] After reviewing the statement he gave to the police, Carlos testified that he gave the police statement "close in time to when everything had happened" and recalled that the events occurred around June 16, 2006.

[27] "MR" is not identified in the record.

8

2006. According to Pena, the June 23 interview was terminated because Rick fell asleep. Following the investigation, CPS made a finding that there was "reason to believe" that Rick had been sexually abused by appellant.

## E. Fernando Ruvalcaba

Fernando Ruvalcaba, a patrol officer with the City of San Juan Police Department, testified that he was working on June 21, 2006, when Ms. Pena filed a report of alleged sexual assault in this case. Officer Ruvalcaba testified that he took the report and forwarded it for investigation.

## F. Lisa Gomez

Lisa Gomez, a forensic interviewer at the Children's Advocacy Center, testified that she interviewed Rick at the center on June 27, 2006. Gomez testified that she was the first person to whom Rick described appellant's alleged acts of sexual abuse in detail.[28] Rick told Gomez that appellant would "play touch" with him. When asked to describe how appellant played "touch," Rick said that appellant would take off his (appellant's) pants and touch Rick's butt with appellant's "wee wee."[29] According to Gomez, Rick said that appellant touched him "inside his butt." Rick told Gomez that appellant "would put his wee wee in his butt and that it hurt a lot. He [Rick] also said that [appellant] put his wee wee in his [Rick's] mouth . . . ." Gomez testified that Rick identified on anatomical drawings the "wee wee" as a penis and "the butt as a butt."

---

[28] At a pretrial hearing, the trial court found that Gomez is the appropriate outcry witness for Counts One and Two. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp. 2009). Although article 38.072 has been amended since the date the offense allegedly occurred, none of the amendments are pertinent to the issues before us, and we therefore cite the current version of the statute.

[29] Rick used an anatomical drawing to identify appellant's "wee wee" as his penis.

9

**G. Elvia Mungia**

Elvia Mungia, the medical examiner for the Children's Advocacy Center,[30] testified that she performed a sexual assault exam on Rick on June 22, 2006.[31] Mungia stated that Carlos accompanied Rick and responded to her questions; Carlos told her that Rick was afraid of appellant, was very anxious and cried for no apparent reason, was not eating normally, and was experiencing bowel incontinence. Mungia stated that during her examination of Rick's genitalia, she noticed an area between the anus and the scrotum that was "stretched," leaving a "stretch mark." On cross-examination, Mungia stated that she did not observe any lacerations, swelling, or other injuries in Rick's rectum. On re-direct examination, Mungia testified that anal tissue heals quickly—typically within three or four days—and does not leave scarring.

**H. Roy Estrada**

Roy Estrada, an investigator for the City of San Juan Police Department, testified that, on June 22 or 23, 2006, he was assigned to investigate the sexual abuse allegations in this case. Officer Estrada was present when Rick was interviewed at the Children's Advocacy Center on June 27, 2006. Based on his investigation and Rick's medical exam, Officer Estrada prepared the complaint and obtained a warrant for appellant's arrest on July 6, 2006.

**I. Maria Luisa Soto**

Soto, Rick's mother, testified that at the time of trial, Rick had been living with her

---

[30] Mungia is a SANE nurse and is trained to perform examinations on victims of sexual abuse.

[31] Mungia's report of the examination was admitted into evidence as State's Exhibit 6.

10

for over a year and was not taking any medications.

## J. Rick

Rick testified that he does not visit appellant any more because "he does bad things to me." When prompted to indicate on a drawing where appellant did "bad things" to him, Rick stated he did not remember. Eventually, Rick testified that appellant used his "wee wee" to do bad things to him, that appellant put his "wee wee" in Rick's butt, and it hurt and made him feel "bad." When asked if appellant put his "wee wee" anywhere else, Rick said, "no."

## K. Michael Kilgore, M.D., Defense Witness

The only witness presented by the defense was Michael Kilgore, M.D., a family practice physician. Dr. Kilgore stated his conclusion that Rick had not been sexually assaulted. Dr. Kilgore explained that he saw no evidence of anal intercourse, and that typically, a child who had been anally assaulted by an adult male would exhibit signs of tearing or trauma to his rectum. In Dr. Kilgore's opinion, "stretching" is not indicative of sexual assault, and in this case, could have resulted from constipation. On cross-examination, Dr. Kilgore admitted that if appellant's penis contacted—but did not penetrate—Rick's anus, there may not have been any physical evidence. He also stated that had penetration occurred, but more than seventy-two hours had elapsed between the assault and the exam, it was "less likely" that there would be any evidence unless there was damage from tearing of the anus rectus muscle.

On cross-examination, Dr. Kilgore was questioned about Rick's medical records,

provided by Elisa Garza Sanchez, M.D.[32]  The records reflect that Dr. Sanchez had been treating Rick for ADHD and bed-wetting since 2004.  The records reflect that in April 2006, the bed-wetting was resolved and Rick was taking Ritalin.  Records of a visit on May 16, 2006 reflect that the bed-wetting had resumed, and medication was again prescribed for the problem.  The last entry in Dr. Sanchez's records is on May 25, 2006, which reflect that both the hyperactivity and the bed-wetting were controlled with medications.

## IV.  Discussion

### A.  Legal and Factual Sufficiency:  Count One

As noted, appellant challenges the legal and factual sufficiency of the evidence of the date the alleged offenses occurred.  Appellant argues that "there was never any testimony that [a]ppellant committed these acts on *any* date, whether 'on or about' or on any date certain."  According to appellant, the State's evidence of Rick's medical records established only a "sequence of medical events," but did not establish that the alleged acts were committed on a particular date.  Appellant further argues that the State's witnesses testified only that Rick's statements about the alleged abuse occurred in June 2006, not as to "when the abuse was alleged to have occurred."

We are unpersuaded by appellant's argument.  As the court of criminal appeals noted in *Dixon,*

> "[T]ime is not [usually] a material element of an offense," and in some cases "it may be impossible for the State to know precisely, or even approximately, when the charged offense occurred."  Especially where young children are involved, we have cautioned that courts cannot impose unrealistic expectations regarding proof of when an offense actually occurred:  "[I]t is not often that a child knows, even within a few days, the date that she was

---

[32] Dr. Sanchez's medical records were admitted as State's Exhibit 3.

12

sexually assaulted."[33]

Here, there is considerable evidence that Rick *reported* the alleged sexual abuse in June of 2006: (1) Gamez testified that Rick reported the alleged sexual abuse in June of 2006; (2) Carlos testified that Rick reported the alleged sexual abuse in June of 2006; (3) Pena testified she received a referral to investigate the allegations on June 19, 2006; (4) Officer Ruvalcaba testified he received a report regarding the allegations on June 21, 2006; (5) Gomez, the outcry witness, interviewed Rick on June 27, 2006; (6) Mungia performed the sexual assault exam on June 22, 2006; and (7) Officer Estrada testified he was assigned to the case on June 22 or 23, 2006.

In addition, the circumstantial evidence shows that Dr. Sanchez's medical records reflect that she saw Rick on May 25, 2006, and that his hyperactivity and bed-wetting were controlled with medications. Dr. Sanchez's records do not reflect that Rick presented with any additional problems—such as bowel incontinence—at the end of May 2006.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant caused his sexual organ to contact or penetrate Rick's sexual organ on or about June 17, 2006 (Count One).[34] Furthermore, viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[35] Therefore, the evidence is legally and factually sufficient as to Count One. We overrule appellant's first issue.

---

[33] *Dixon*, 201 S.W.3d at 736 (quoting *Garcia v. State*, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998)).

[34] *See Hooper*, 214 S.W.3d at 13.

[35] *See Watson*, 204 S.W.3d at 414-15.

## B.  Legal and Factual Sufficiency: Count Two

By his second issue, appellant challenges the legal and factual sufficiency of the evidence supporting his conviction in Count Two.  Specifically, appellant argues that the evidence is legally and factually insufficient because "[Rick] himself testified that [a]ppellant put his wee wee in his butt yet nowhere else."

We disagree.  Gomez testified that when she interviewed Rick, he told her that appellant would put his "wee wee" in Rick's mouth and Rick identified appellant's "wee wee" as appellant's penis.  As noted, outcry testimony alone can be sufficient to sustain a conviction for aggravated sexual assault.[36]  Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant penetrated Rick's mouth with his sexual organ (Count Two).[37]  Furthermore, viewing the evidence in a neutral light, we cannot conclude that the evidence is so weak that the jury's verdict seems clearly wrong and manifestly unjust or against the great weight and preponderance of the evidence.[38]  We overrule appellant's second issue.

## C.  Unanimity Issue as to Count One

By his third issue, appellant contends that the jury charge erroneously permitted his conviction on a less-than-unanimous verdict on the alternative paragraphs alleged in Count One.  Specifically, appellant contends that he was "deprived of his right to a unanimous jury verdict because the jurors were not required to unanimously agree on whether

---

[36] *See Ozuna*, 199 S.W.3d at 606.

[37] *See Hooper*, 214 S.W.3d at 13.

[38] *See Watson*, 204 S.W.3d at 414-15.

[a]ppellant merely caused his sexual organ to 'contact' the anus of the victim or whether [a]ppellant caused his sexual organ to penetrate the anus of the victim." Appellant argues that the trial court's failure to so instruct the jurors was "fundamental error which compromised [his] right to a fair and impartial trial."

As this Court has noted, "[a]n appellate court's 'first duty' in analyzing a jury charge issue is 'to decide whether error exists.'"[39] When the State charges an individual with different criminal acts, regardless of whether they constitute violations of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts."[40]

However, as the First Court of Appeals has noted in *Santee v. State*, "'[a]n allegation of 'penetration' of the sexual organ overlap[s] an allegation of 'contact' of the sexual organ because penetration of the genitals necessarily includes contact.'"[41] "Thus, a jury that finds a defendant guilty of penetration of the sexual organ necessarily has determined unanimously that the defendant made contact with the sexual organ."[42] Here, as in *Santee*,

> The jury unanimously found that appellant contacted or penetrated complainant's [anus] with his sexual organ. Because a finding of penetration

---

[39] *Soto*, 267 S.W.3d at 334.

[40] *Id.* at 335.

[41] 247 S.W.3d 724, 728 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (quoting *Vick v. State*, 991 S.W.2d 830, 834 n.2 (Tex. Crim. App. 1999)).

[42] *Id.* (citing *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (stating that "penile contact with mouth, genitals, or anus in the course of penile penetration" is subsumed in penetration offense); *Tyson v. State*, 172 S.W.3d 172, 178 (Tex. App.–Fort Worth 2005, pet. ref'd) (concluding that only one offense occurs if one act "would necessarily be subsumed by another, such as contact being subsumed by penetration"); *Hendrix v. State*, 150 S.W.3d 839, 848 (Tex. App.–Houston [14th Dist.] 2004, pet. ref'd) ("The penetration alleged also necessarily included contact.")).

15

necessarily includes contact, we hold that the jury unanimously determined that appellant contacted complainant's [anus] and that it was not error to submit the charge in the disjunctive.[43]

We hold that the charge "did not deprive appellant of a unanimous verdict because all of the jurors who believed there was penetration necessarily also believed that antecedent contact had occurred, and a non-unanimous verdict was not possible."[44] We overrule appellant's third issue.

Because of our disposition of appellant's third issue, we need not address his fourth issue.[45]

## V. Conclusion

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. 47.2(b)

Delivered and filed the
24th day of June, 2010.

---

[43] *Id.* (citing *Hendrix*, 150 S.W.3d at 848) (holding disjunctive jury charge of contact that was subsumed by penetration was not error because it "did not deprive appellant of a unanimous verdict because all of the jurors who believed there was penetration necessarily also believed that antecedent contact had occurred, and a non-unanimous verdict was not possible"); *Valdez v. State*, 211 S.W.3d 395, 400 (Tex. App.–Eastland 2006, no pet.) (stating that there was no danger of jury not returning unanimous verdict because contact with child's anus by appellant's sexual organ was subsumed within allegation that appellant had penetrated child's anus with his sexual organ); *see also Tyson*, 172 S.W.3d at 178 (analyzing section 22.011 of penal code in light of *Vick* and concluding that "the different types of conduct described in section 22.011(a)(2) constitute separate offense[s] even if the different types of conduct occur in the same transaction *except in cases in which one of the acts would necessarily be subsumed by another, such as contact being subsumed by penetration*") (emphasis added)).

[44] *Hendrix*, 150 S.W.3d at 848.

[45] *See* TEX. R. APP. P. 47.1.